UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERPAUL D. SPENCER,
    Plaintiff,
    v.

CITY OF MILWAUKEE POLICE DEPARTMENT, ED FLYNN, MICHAEL VAGNINI, JACOB KNIGHT, JEFFREY KLINE, PAUL MARTINEZ, GREGORY KUSPA, JESSE BUSSHARDT, MICHAEL VALUCH, and KEITH GARLAND,
    Defendants.

Case No: 16-C-0662

JON W. SANFILIPPO
CLERK

16-C-0662

## COMPLAINT UNDER 42 USC § 1983

NOW COMES, The Plaintiff, Jerpaul D. Spencer, pro se, who files this complaint for damages under 42 USC § 1983, alleging a pattern of illegal searches and seizures, as well as unconstitutional policies that lead to illegal searches and seizures. In support of this complaint, Plaintiff alleges as follows:

### JURISDICTION & VENUE

1. This Court has jurisdiction over the Plaintiff's claims of violation of his rights under the U.S. Constitution, pursuant to 28 USC §§1331(1) and 1343.

2. This District is the proper venue as a substantial part of the events giving rise to the claims herein occurred in this District.

### PARTIES

3. Plaintiff, Jerpaul D. Spencer, is currently a state Prisoner confined at Green Bay Correctional Institution, 2833 Riverside Drive, P.O. Box 19033, Green Bay, Wisconsin 54307. However, at times relevant hereto, Plaintiff resided in the City of Milwaukee, Wisconsin.

4. Defendant, City of Milwaukee Police Department, is a law enforcement agency with jurisdiction in the City of Milwaukee, vested with the duty to protect and serve the citizens of Milwaukee and to act in accordance with the United States Constitution.

5. Defendant, Ed Flynn, is the City of Milwaukee Police Department ("MPD") Chief of Police. As such, he is responsible for the administration and operation of the entire MPD, including maintaining and implementing policies that ensure that the officers of the MPD act in a constitutionally acceptable manner.

6. Defendants Michael Vagnini, Jacob Knight, Jeffrey Kline, Paul Martinez, Gregory Kuspa, Jesse Busshardt, Michael Valuch and Keith Garland were, at times relevant hereto, employed by the MPD as sworn police officers. As such, they had the responsibility of policing within their jurisdiction in a constitutionally acceptable manner.

7. By virtue of their authority as sworn law enforcement officials, governed by state and federal law, each defendant was acting under color of state law at times relevant hereto.

## ALLEGATIONS OF FACT

8. Plaintiff herby incorporates by reference in their entirey, all of the allegations set forth in ¶¶1-7 herein, fully and completely, as if set forth again verbatim, except insofar as not applicable.

9. Between May and July of 2011, Plaintiff was illegally stopped, searched, and, on several occasions, sexually assaulted, by various MPD officials who did not have probable cause or reasonable suspicion to support any search or seizure. Plaintiff estimates that he was stopped on 10 to 15 separate occasions. These illegal stops and searches were sanctioned, approved, and encouraged by MPD policy and custom, as well as Defendant Flynn himself.

10. On June 25, 2011, Plaintiff got out of a vehicle after arriving at his grandmother's house in the 3500 block of N. 23rd St. Plaintiff was immediately approached by at least 5 MPD officers, including Defendants Vagnini, Knight, Kline, Martinez and Kuspa.

11. Plaintiff was in the process of ascending the outside stairs when Vagnini shouted Plaintiff's name followed by "If you go in that house we'll kick the door in and say you ran in there."

12. Plaintiff stopped and Vagnini, Knight, Martinez, Kline and Kuspa swarmed Plaintiff. Vagnini grabbed Plaintiff's arm

and directed him to the back of the car. Vagnini forcefully slammed Plaintiff against the car and proceeded to place him in handcuffs. Vagnini began a "pat search" of Plaintiff while the other officers canvassed the vicinity.

13. At some point during the "pat search" Vagnini placed his bare hand down the back of Plaintiff's waistband, running his hand between Plaintiff's buttocks. Vagnini then slid his hand to the front of Plaintiff's waist and proceeded to squeeze Plaintiff's genitals. Plaintiff, who was shocked and appalled, asked Vagnini, "What the hell are you doing?" Vagnini shoved Plaintiff against the car harder and yelled at Plaintiff to not resist.

14. Defendant Knight appeared and grabbed Plaintiff's right arm, and Vagnini carried on with a pat-down of Plaintiff's legs. No contraband was discovered in the so-called "pat search," not the search of the vicinity.

15. Plaintiff was taken to jail, but was released after five days when no charges were filed.

16. Defendants Vagnini, Knight, Kline, Martinez and Kuspa were all aware that Plaintiff ahd not committed any act that warranted the search or seizure of his person. In addition, Defendant Knight had observed thesexual assault of Plaintiff by Vagnini, and had a reasonable opportunity and duty to intervene, but failed to do so.

17. Sometime during June or July, 2011, Plaintiff was driving southbound on N. 23rd St. with his cousin. Plaintiff stopped at a 4-way stop at the intersection of N. 23rd St. and Keefe Ave. Plaintiff saw 3 MPD squad cars in tandem, stopped at the STOP sign on W. Keefe Ave. facing Westbound.

18. As Plaintiff waited for the first squad car to proceed through the intersection, as it had the right-of-way, all 3 squad cars aggressively boxed-in Plaintiff's vehicle, nearly hitting Plaintiff's vehicle. This caused Plaintiff to be afraid for his safety.

19. Defendant Vagnini was in one of the cars, and got out and began yelling at Plaintiff to turn the car off and get out.

20. Plaintiff complied and was directed to the back of the vehicle.

-3-
Case 2:16-cv-00662-PP   Filed 06/06/16   Page 3 of 8   Document 1

21. While the other officers began searching the vehicle, Vagnini began a "pat search" of Plaintiff. When Vagnini checked Plaintiff's waistband, Vagnini put his bare hand down the back of Plaintiff's pants. Vagnini slid his hand between Plaintiff's buttocks.

22. Plaintiff told Vagnini to be "gone with that sh--," indicating to Vagnini to stop the inappropriate touching. Vagnini told Plaintiff to shut up unless "you want to go to jail."

23. Vagnini completed a pat-down of Plaintiff's legs and told Plaintiff to lean against the car, and Plaintiff complied. The officers concluded their search of the vehicle, having found no contraband or evidence of a crime. Plaintiff and his cousin were then told that they were free to go.

24. Defendant Vagnini did not have probable cause or reasonable suspicion that would warrant the search and seizure of Plaintiff or the vehicle he was lawfully operating.

25. On July 4, 2011, Plaintiff was at his grandmother's house on N. 23rd St., celebrating Independence Day. At approximately 6:55 p.m., Plaintiff began walking north on N. 23rd St. He was soon approached by several MPD officers, including Defendants Valuch and Garland. Valuch told Plaintiff to "stop." Plaintiff complied, fearing that he would be shot or beaten.

26. Valuch began a "pat search" of Plaintiff. As Valuch checked Plaintiff's waistband, he partially pulled down Plaintiff's shorts and slid his hand back and forth between Plaintiff's buttocks.

27. Plaintiff told Valuch to stop, but Valuch responded by telling Plaintiff to shut up and quit "resisting." Valuch told Plaintiff to open his mouth, and Plaintiff promptly did so.

28. Valuch immediately yelled to the other officers that Plaintiff had swallowed a baggy of narcotics. Plaintiff did not swallow anything, did not have anything in his mouth, nor was he otherwise in possession of any narcotics or other contraband. Plaintiff told Valuch and his cronies several times that he had not swallowed anything.

29. Defendants Valuch and Garland arrested Plaintiff and brought him to St. Mary's Hospital shortly thereafter, where they

handcuffed Plaintiff to a hospital bed in the emergency department.

30. Valuch and Garland told medical personnel that Plaintiff had swallowed a baggy of narcotics, which Plaintiff vehemently denied and disputed. Based on Valuch and Garland's calumnious statements, medical personnel told Plaintiff he needed to drink up to 2 gallons of a powerful laxative solution typically administered to pre-operation gastrointestinal patients that clears out the entire GI tract. Valuch, Garland and medical personnel told Plaintiff he would have to drink the solution until he defecated out a baggy of narcotics.

31. Plaintiff again stated that he had not ingested any drugs and wished to refuse treatment, that he did not want to drink the solution. Valuch, Garland, and medical personnel told Plaintiff that if he refused, they would restrain him and force a tube through his nostril and down into his stomach in order to pour the solution into Plaintiff's stomach.

32. Fearing this outcome, Plaintiff asked if he drank some of the solution, defecated once and no drugs were found in his stool, would he be able to go home. Valuch, Garland and medical personnel agreed to this.

33. After drinking about 4 large cups of the solution, which caused him severe stomach and intestinal pain, over the course of 2-3 hours, and having defecated several times, Plaintiff indicated that he would no longer drink any of the solution, as no drugs were found. He again firmly stated that he had not swallowed anything and that he wished to refuse all medical treatment.

34. Consequently, Valuch and Garland told medical personnel that they wanted to force Plaintiff to ingest the solution, to which medical personnel agreed.

35. Valuch and Garland proceeded to forcefully restrain Plaintiff, causing him physical pain, as medical personnel inserted a tube into Plaintiff's nose and down into his stomach, causing more severe pain and emotional suffering. The solution was poured into the tube and directly into Plaintiff's stomach every hour for several hours.

36. Plaintiff had painful, liquid bowel movements about every 15 minutes, which also caused Plaintiff's anal area to become raw and painful, taking a week to heal. No narcotics or

Case 2:16-cv-00662-PP   Filed 06/06/16   Page 5 of 8   Document 1
-5-

other foreign bodies were present in any of Plaintiff's stool.

37. In the morning, Valuch and Garland were relieved by another MPD officer. When this officer learned the circumstances of Plaintiff's arrest and the forced "treatment," she told medical personnel that any further forced treatment was inappropriate and Plaintiff could be discharged from the hospital. Plaintiff was transported to jail shortly thereafter, but was released several days later, after no charges were filed.

38. Valuch and Garland had no probable cause or reasonable suspicion that would justify a warrantless search and seizure. In addition, both Valuch and Garland were aware that Plaintiff had not actuall ingested any drugs or anything else, and knew that Plaintiff would be subjected to unnecessary and painful medical treatment.

39. In addition to the above allegations, Defendants Busshardt and Vagnini falsified information regarding the June 25, 2011 arrest. They did so with the intent to falsely accuse Plaintiff of a crime in order to arrest and illegally search him.

40. As a result of the repeated harassment, frivolous arrests, sexual assaults, and the unconstitutional incarceration that followed, Plaintiff continues to suffer from severe emotional distress, including depression, anxiety, paranoia and debilitating fear of law enforcement officers.

41. Furthermore, these illegal searches and seizures were directed to occur due to long-standing MPD policy, and even though each defendant was aware that they were repeatedly violating the constitutional rights of innocent people, they continued their course of corruption. Additionally, Defendant Flynn had received numerous complaints of police misconduct and illegal searches, seizures and sexual assaults being committed by his officers, but he deliberately failed to investigate them, thereby leading to more violations.

## LEGAL CLAIMS

42. Defendants City of Milwaukee Police Department and Ed Flynn violated Plaintiff's constitutional rights by having a policy directing MPD officers to engage in illegal arrests and searches, which lead to the repeated violation of Plaintiff's

constitutional rights.

43. Defendants Vagnini and Busshardt put together a false set of alleged facts in their incident reports to cover up the fact that they had illegally searched and seized Plaintiff on June 25, 2011 in violation of Plaintiff's constitutional rights.

44. Defendants Vagnini, Knight, Kline, Martinez and Kuspa violated Plaintiff's constitutional rights by conspiring and acting to illegally search and seize Plaintiff without probable cause or reasonable suspicion.

45. Vagnini violated Plaintiff's constitutional rights by using excessive force on Plaintiff on June 25, 2011 by slamming Plaintiff against a car with undue force and for no valid reason.

46. Defendant Vagnini violated Plaintiff's constitutional rights by sexually assaulting Plaintiff during a so-called "pat search" on June 25, 2011, when he fondled Plaintiff's genital and anal areas.

47. Defendant Knight violated Plaintiff's constitutional rights when he failed to intervene or attempt to stop Vagnini's illegal and sexually inappropriate "search" of Plaintiff. Knight simply watched Vagnini violating Plaintiff.

48. Defendant Vagnini violated Plaintiff's constitutional rights by searching and seizing Plaintiff in June or July of 2011 near N. 23rd St. and Keefe Ave. Vagnini also violated Plaintiff's constitutional rights by sexually assaulting him. Vagnini acted knowing that he lacked probable cause or reasonable suspicion to search or seize Plaintiff.

49. Defendant Valuch and Garland violated Plaintiff's constitutional rights on July 4, 2011 when they searched and seized Plaintiff without probable cause or reasonable suspicion. Valuch violated Plaintiff's constitutional rights by sexually assaulting him during the illegal search.

50. Defendants Valuch and Garland violated Plaintiff's constitutional rights when they knowingly told medical personnel that Plaintiff had ingested a baggy of narcotics when he had not, in fact, done so. They knew that this would lead to unnecessary and painful treatment of Plaintiff. They also violated Plaintiff's constitutional rights when they forced unwanted medical treatment upon Plaintiff.

## PRAYER FOR RELIEF

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by a jury of his peers to adjudicate this lawsuit.

### DAMAGES

a. Plaintiff seeks an award of compensatory damages and punitive damages against each defendant, the amount of which to be determined by the trier-of-fact.

b. Plaintiff seeks compensation for fees, costs and attorney fees as applicable.

c. Plaintiff seeks any further relief that the Court may deem just and equitable.

## SWORN DECLARATION AS TO FACTS

I, Jerpaul D. Spencer, hereby swear under penalty of perjury that the foregoing complaint and allegations herein are true and correct.

Dated this 2nd day of June, 2016.

Respectfully Submitted:

*Jerpaul D. Spencer*

Jerpaul D. Spencer

Green Bay Corr. Inst.
P.O. Box 19033
Green Bay, WI 54307