UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JERPAUL D. SPENCER,

       Plaintiff,

       v.                              Case No. 16-C-0662

CITY OF MILWAUKEE POLICE DEPARTMENT,
EDWARD A. FLYNN, MICHAEL VAGNINI,
JACOB KNIGHT, JEFFREY KLINE,
PAUL MARTINEZ, GREGORY KUSPA,
JESSE BUSSHARDT, MICHAEL VALUCH, and
KEITH GARLAND

       Defendants.

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DOC. 2) AND SCREENING PLAINTIFF'S COMPLAINT

Plaintiff, Jerpaul D. Spencer, a state prisoner, has filed a pro se civil rights complaint. The matter is now before the court on his motion for leave to proceed without prepayment of the filing fee and for screening of that complaint following assessment and payment of the initial partial filing fee of $3.44.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a cognizable claim under the federal notice pleading system, plaintiff has to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for a plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, courts must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the

2

deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give a plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

In his sworn complaint, plaintiff alleges a pattern of illegal searches and seizures by Milwaukee police officers between May and July of 2011. He estimates ten to fifteen stops during that time and asserts that he was stopped illegally, searched, and sexually assaulted with no probable cause or reasonable suspicion. Plaintiff then details three specific incidents.

On June 25, 2011, defendants Vagnini, Knight, Kline, Marinez, and Kuspa allegedly approached plaintiff after he exited his vehicle in front of his grandmother's house. As plaintiff climbed the stairs, Vagnini shouted plaintiff's name and said, "If you go in that house we'll kick the door in and say you ran in there." (Doc. 1 at 2). Plaintiff stopped, and the defendants swarmed him.

Vagnini grabbed plaintiff's arm, directed him to the back of the car, and then slammed plaintiff against the car and placed him in handcuffs. Vagnini began a "pat search" of plaintiff while the other defendants canvassed the vicinity. During the search, Vagnini placed his bare hand down the back of plaintiff's waistband and ran his hand between plaintiff's buttocks. Vagnini then slid his hand to the front of plaintiff's waist and squeezed plaintiff's genitals. When plaintiff, shocked and appalled, asked Vagnini "What

3

the hell are you doing?," Vagnini shoved plaintiff against the car harder and yelled at plaintiff not to resist.

Knight appeared and grabbed plaintiff's right arm while Vagnini continued the search. No contraband was discovered on plaintiff or in the vicinity, but he was still taken to jail. Afer five days when no charges were filed, plaintiff was released. In addition to the illegal stop, search and use of excessive force, plaintiff asserts that defendants Vagnini and Busshardt falsified information regarding the June 25, 2011, arrest to falsely accuse plaintiff of a crime to arrest and search him illegally.

Next, plaintiff contends he was driving on North 23rd Street in Milwaukee with his cousin in June or July 2011. He stopped for the four-way stop at the intersection with Keefe Avenue and noticed three Milwaukee Police Department squad cars in a row on Keefe facing west. The first squad car had the right of way so plaintiff waited for it to proceed through the intersection. Suddenly, the three squad cars boxed in plaintiff's vehicle aggressively, nearly hitting him. Vagnini was in one of the vehicles. He got out and yelled at plaintiff to turn off his car and to get out. Plaintiff complied and Vagnini directed him to the back of the vehicle, where Vagnini began a pat search with his bare hand and slid his bare hand between plaintiff's buttocks. Plaintiff and Vagnini exchanged words and Vagnini threatened to take plaintiff to jail, but ultimately told plaintiff and his cousin they were free to go after other officers finished searching plaintiff's car.

Finally, on July 4, 2011, plaintiff was celebrating Independence Day at his grandmother's house. At approximately 6:55 p.m., plaintiff began walking north on North Twenty-Third Street, and he was approached by several police officers, including defendants Valuch and Garland. Valuch told plaintiff to stop, and he complied, fearing that

4

he would be shot or beaten. Valuch began a pat search, checked plaintiff's waistband, partially pulled down plaintiff's shorts, and then slid his hand back and forth between plaintiff's buttocks. Plaintiff told Valuch to stop, but Valuch told plaintiff to shut up and stop resisting. Valuch told plaintiff to open his mouth. When plaintiff complied, Valuch immediately yelled to the other officers that plaintiff had swallowed a baggy of narcotics. Plaintiff did not swallow anything, did not have anything in his mouth, and was not in possession of any narcotics or other contraband. Plaintiff told Valuch and the other officers this several times, but Valuch and Garland arrested plaintiff and took him to St. Mary's Hospital.

At the hospital, Valuch and Garland told medical personnel that plaintiff had swallowed a baggy of narcotics, which plaintiff vehemently denied and disputed. Plaintiff was forced to drink up to two gallons of a powerful laxative solution to clear out his GI tract. Valuch, Garland, and medical personnel threatened plaintiff with a tube through his nostril and down into his stomach to ingest the solution if he did not comply. Plaintiff drank four large cups of the solution and defecated several times, but no drugs were found. Plaintiff then stated that he had not swallowed anything and that he wanted to refuse all medical treatment. At Valuch and Garland's direction, plaintiff was restrained forcefully and force fed the solution through a nose tube every hour for several hours. Plaintiff had painful, liquid bowel movements every fifteen minutes, and the effects took a week to heal. No narcotics or foreign bodies were found in plaintiff's stool.

In the morning, another officer relieved Valuch and Garland. When the relief officers learned the circumstances of plaintiff's arrest and forced treatment, she told medical personnel that any further forced treatment was inappropriate and that plaintiff

5

could be discharged from the hospital. A short time later, plaintiff was transported to the jail, then released several days later after no charges were filed.

"Warrantless searches are *per se* unreasonable under the Fourth Amendment unless one of few recognized exceptions applies." *U.S. v. Leo*, 792 F.3d 742, 748 (7 Cir. 2015) (citations omitted) (emphasis in original). Plaintiff's claims certainly implicate his Fourth Amendment rights, and he has alleged personal involvement by defendants Vagnini, Knight, Kline, Martinez, Kuspa, Busshardt, Valuch, and Garland. He may proceed on Fourth Amendment claims against these defendants.

Plaintiff also submits that these illegal searches and seizures occurred as a result of long-standing Milwaukee Police Department policy. He also asserts that defendant Flynn "had received numerous complaints about police misconduct and illegal searches, seizures and sexual assaults being committed by his officers, but he deliberately failed to investigate them, thereby leading to more violations." (Doc. 1 at 6). Plaintiff may proceed on a claim against Flynn in his individual capacity regarding his own actions or inaction. He also may proceed on a claim against Flynn in his official capacity that the City of Milwaukee had a long-standing policy or custom of allowing (or encouraging) illegal searches and seizures. *See Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Plaintiff may not proceed on any claim against the "City of Milwaukee Police Department" because the police department is not an entity separate from the City and therefore is not a suable entity separate from the City. *See Grow v. City of Milwaukee*, 84 F.Supp.2d 990, 995-96 (E.D. Wis. 2000). There is no need for plaintiff to amend to name the City of Milwaukee because his claim against Flynn in his official capacity has the same effect. *See Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (pretrial detainee's

6

§ 1983 claims against county sheriff in his official capacity were properly treated as claims against county itself).  Therefore,

IT IS ORDERED that plaintiff's motion for leave to proceed without prepayment of the filing fee (Doc. 2) is GRANTED.

IT IS FURTHER ORDERED that the City of Milwaukee Police Department is DISMISSED as a defendant to this action.

IT IS FURTHER ORDERED that the United States Marshal shall serve a copy of the complaint and this order upon the following defendants pursuant to Federal Rule of Civil Procedure 4: Edward A. Flynn, Michael Vagnini, Jacob Knight, Jeffrey Kline, Paul Martinez, Gregory Kuspa, Jesse Busshardt, Michael Valuch, and Keith Garland.  Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service.  28 U.S.C. § 1921(a).  The current fee for waiver-of-service packages is $8.00 per item mailed.   The full fee schedule is provided at 28 C.F.R. §§  0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because in forma pauperis plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

IT IS FURTHER ORDERED that defendants who are served shall file a responsive pleading to the complaint.

IT IS FURTHER ORDERED that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $346.56 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the

7

account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

IT IS FURTHER ORDERED that a copy of this order be sent to the warden of the institution where the inmate is confined.

IT IS FURTHER ORDERED that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court further advises plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 23rd day of August, 2016.

> BY THE COURT
>
> /s/ C.N. Clevert, Jr.
> C. N. CLEVERT, JR.
> U.S. District Judge

8