UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERPAUL D. SPENCER,

                    Plaintiff,

        v.                                    Case No. 16-cv-662-pp

MICHAEL VAGNINI, *et al.*,

                    Defendants.

**ORDER REQUIRING PLAINTIFF TO AMEND MOTION FOR LEGAL FEES
AND COSTS PURSUANT TO 42 U.S.C. § 1988 (DKT. NO. 178)**

On June 6, 2016, plaintiff JerPaul D. Spencer—who at that time was incarcerated in Green Bay Correctional Institution and was representing himself—filed a complaint under 42 U.S.C. §1983, alleging a pattern and policy of illegal searches, seizures and arrests by various current and former Milwaukee Police Department officers. Dkt. No. 1. He sued these officers, former Chief of Police Edward Flynn and the City of Milwaukee Police Department and sought compensatory and punitive damages "to be determined by the trier-of-fact." Id. at 8. District Judge Charles N. Clevert, Jr., to whom this case previously was assigned, screened the complaint and allowed the plaintiff to proceed on Fourth Amendment claims against the officers and against former Chief Flynn on a claim of municipal liability. Dkt. No. 13. On November 8, 2018, attorney Nathaniel Cade of Cade Law Group LLC filed a notice of appearance on behalf of the plaintiff. Dkt. No. 95.

After an extended discovery period, the defendants filed a motion for partial summary judgment. Dkt. No. 119. The court granted that motion, dismissed the plaintiff's municipal liability claim and dismissed former Chief Flynn and several of the police officers. Dkt. No. 134. During a June 2, 2021 status conference, the court discussed pretrial and trial dates for the plaintiff's remaining claims against defendants Michael Vagnini, Jacob Knight, Michael Valuch and Keith Garland. Dkt. No. 143. The court scheduled a trial to begin January 24, 2022; the parties anticipated that the trial would last four to five days. Id. On September 20, 2021, Attorney Annalisa Pusick, also of Cade Law Group LLC, filed a notice of appearance on behalf of the plaintiff. Dkt. No. 146.

On January 6, 2022, the court held the final pretrial conference. Dkt. No. 158. The court ruled on the parties' pending motions *in limine* and explained changes to trial procedures because of the COVID-19 pandemic. Id. Less than two weeks later, on January 18, 2022, the parties filed a joint motion to adjourn the January 24, 2022 jury trial. Dkt. No. 156. The parties explained that they had reached a tentative settlement, subject to approval of the Milwaukee Common Council. Id. The Milwaukee Common Council was scheduled to meet on February 8, 2022, and the parties asked to schedule a status conference sometime after that meeting. Id. The court granted the motion, removed the January 24, 2022 trial from its calendar and ordered the parties to file a joint status report by February 11, 2022, updating the court about the results of the Common Council's February 8, 2022 meeting. Dkt. No. 157.

2

On January 31, 2022, however, the plaintiff filed a motion asking the court to re-schedule the trial. Dkt. No. 159. Plaintiff's counsel explained that the Common Council had met on January 31, 2022, during which they had discussed and rejected the proposed settlement. Id. at 1. The court granted the motion and scheduled a status conference for February 8, 2022. Dkt. No. 160. At that status conference, the court re-scheduled the trial to begin on July 11, 2022, and to last five days. Dkt. No. 162.

The trial took place from July 11 through July 15, 2022. Dkt. No. 175. The jury returned a verdict in favor of the plaintiff on his claims of excessive force and unlawful search from June 25, 2011, and on his claims of an unlawful search and seizure from an unspecified date in June or July 2011 against defendant Vagnini; the jury also found for the plaintiff on his claim of a July 4, 2011 unlawful arrest against defendant Valuch. Dkt. No. 176. The jury awarded the plaintiff $217,500 in compensatory damages against Vagnini and Valuch and $168,500 in punitive damages against Vagnini—a total award of $386,000. Id. The jury returned a verdict in favor of the defendants on all other claims, including all the claims against defendants Knight and Garland. Id.

The plaintiff filed this motion seeking attorneys' fees and costs incurred during counsel's representation. Dkt. No. 178. The defendants oppose the motion. Dkt. No. 186.

## I.    Relevant Law

In a lawsuit involving claims of violations of 42 U.S.C. §1983 (and various other federal laws), "the court, in its discretion, may allow the

3

prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988(b). As the court explained years ago in the screening order, however, the Prison Litigation Reform Act ("PLRA") applies to this case because the plaintiff was a prisoner when he filed his complaint. Dkt. No. 13 at 1. The PLRA "sets both absolute and relative limits on attorneys' fee shifting." Johnson v. Daley, 339 F.3d 582, 583 (7th Cir. 2003). The Seventh Circuit discussed the PLRA's limits (defined in 42 U.S.C. §1997e(d)):

> Subsections (1) and (2) establish relative limits: fees must be 'proportionately related to the court ordered relief' and, when monetary relief is awarded, the fees attributable to that relief cannot exceed 150% of the damages. Subsection (3) establishes an absolute limit at 150% of the hourly rate for defense counsel under the Criminal Justice Act ["CJA"], times the number of hours reasonably devoted to the litigation.

Id. at 583–84 (quoting §1997e(d)).

The hourly rate for defense counsel under the CJA changes periodically. Attorney Cade filed his notice of appearance on November 8, 2018. At that time, the hourly rate for CJA counsel in non-capital cases was $140 an hour and it remained $140 an hour through February 14, 2019. This means that for any work an attorney performed between November 8, 2018 and February 14, 2019 on a case governed by the PLRA, the maximum limit that attorney may be compensated per hour is 150% of $140, or $210 per hour. See https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-2-ss-230-compensation-and-expenses (Guide to Judiciary Policy, Vol. 7 Defender Services, Part A Guidelines for Administering the CJA and Related Statutes, Chapter 2: Appointment and Payment of Counsel, §230.16). On February 15,

2019, the hourly rate for CJA counsel in non-capital cases increased to $148 per hour. This means that for any work an performed on a case governed by the PLRA during that period, the maximum limit the attorney may be compensated per hour is 150% of $148, or $222 per hour. Id. For the calendar year 2020, the CJA hourly rate for non-capital cases rose to $152 per hour, which means the maximum limit an attorney may be compensated for work done on a case governed by the PLRA during the year 2020 is 150% of $152, or $228 per hour. Id. For the calendar year 2021, the CJA hourly rate for non-capital cases rose to $155 per hour, which means the maximum limit an attorney may be compensated for work performed on a PLRA case during the year 2021 is 150% of $155, or $232.50 per hour. Id. Finally, from January 1, 2022 to the present, the CJA hourly rate for non-capital cases has been $158, which means that the maximum limit an attorney may be compensated for work performed in a case governed by the PLRA during the year 2022 is 150% of $158, or $237 per hour. Id.

Courts apply the "lodestar method" to determine a reasonable fee amount under §1988. Blanchard v. Bergeron, 489 U.S. 87, 94 (1989); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Under that method, the court must determine a base amount (the "lodestar") by multiplying the reasonable hours counsel expended on a case by a reasonable hourly rate. Hensley, 461 U.S. at 433. The party seeking attorneys' fees has the burden of submitting evidence establishing the reasonable hours and reasonable hourly rate the court should use to calculate the lodestar and determine an appropriate fee amount. Id.

5

After the court calculates the lodestar, it adjusts that figure up or down depending on a variety of factors not included in the calculation of the lodestar. See Montanez v. Simon, 755 F.3d 547, 553 & n.2 (7th Cir. 2014) (citing Hensley, 461 U.S. at 434, and discussing the twelve "so-called 'Hensley factors' [that] were used before the lodestar method became popular").

"[T]he most critical factor" the court must consider "in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). The degree of success "is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." Hensley, 461 U.S. at 434. A district court "may not 'eyeball'" a fee amount and must instead "provide a clear and concise explanation for its award." Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852, 856–57 (7th Cir. 2009) (citing Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 708 (7th Cir. 2001)). The court's "guiding inquiry is whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" Montanez, 755 F.3d at 553 (quoting Hensley, 461 U.S. at 434).

## II.     The Parties' Positions

The parties agree that the lodestar method applies to calculating the fee award and that the plaintiff is the prevailing party in this lawsuit. But neither party appears to have been aware of the PLRA compensation limits and neither party calculated the lodestar using the hourly rate limits mandated by the

PLRA. Further, they quibble over most details of the lodestar calculation, including the proper starting point given the plaintiff's success on some but not all of his claims at trial, the reasonable hourly rate to use for plaintiff's counsel and staff and the hours the court should include in the lodestar calculation.

A.    The Plaintiff

Plaintiff's counsel provided the court with invoices showing the hours each attorney, paralegal and intern worked on the plaintiff's case, as well as each person's current hourly rate beginning October 24, 2018, and concluding July 22, 2022. Dkt. No. 178 at 4; Dkt. No. 179; Dkt. No. 179-2. The subtotal of services (the attorneys' fees) provided in the invoice is $221,554.50. Dkt. No. 179-2 at 10. The subtotal of expenses (costs) is $4,779.82. Id. at 12. In the motion for fees, however, counsel seeks $231,895.00 in fees, the same $4,779.82 in costs and an enhanced legal fee amount of $77,298.33—a 33% increase in counsel's hourly rates because of the plaintiff's "extraordinary recovery." Dkt. No. 178 at 4, 16. Counsel seeks total fees and costs of $313,973.15. Id. at 16.

Plaintiff's counsel relies on the Hensley factors to reach his lodestar calculation and focuses on "'the degree of success obtained.'" Id. at 5 (quoting Farrar, 506 U.S. at 114). Counsel asserts that the jury's $386,500 "civil rights verdict obtained by a single plaintiff is a successful result by any measure." Id. at 5–6. But he asserts that the court should consider the verdict especially successful because the parties attempted to settle the case before trial and even reached a tentative settlement on the eve of the first trial date. Id. at 6.

Counsel provided the court with documentation showing that on January 24, 2019, counsel made an initial settlement offer of $73,571.73. Id.; Dkt. No. 180-1 at 3. Counsel says he never received a response to this offer. Dkt. No. 178 at 6. On April 10, 2019, ahead of mediation proceedings before Magistrate Judge William E. Duffin, plaintiff's counsel offered to settle the case for $179,345. Id.; Dkt. No. 180-2 at 2. Defense counsel counteroffered "a starting offer of $5,000 to settle this lawsuit, inclusive of all costs and attorney's fees." Dkt. No. 180-4 at 2. The plaintiff rejected that offer. Dkt. No. 178 at 6. During a second attempt at mediation, plaintiff's counsel offered to settle the case for $135,000 against *each* of the four remaining defendants. Id. at 6–7; Dkt. No. 180-5 at 3–10. New defense counsel rejected any attempt to mediate and made no counteroffer. Dkt. No. 178 at 7. Plaintiff's counsel later offered $540,000, which the defendants again rejected. Id.; Dkt. No. 180-7 at 3. Soon after, the parties agreed to settle for half that amount, $270,000. Dkt. No. 178 at 7; Dkt. No. 180-6 at 2. This is the proposed settlement the Milwaukee Common Council rejected on January 31, 2022. Dkt. No. 178 at 7–8; Dkt. No. 180-7 at 2–3.

Plaintiff's counsel next asserts that his proposed rates are appropriate given "his credentials and the credentials of the other lawyers who worked on this file." Dkt. No. 178 at 8. Counsel cites his experience, asserting that since November 1, 2021, he "has tried six jury trials to verdict, four in federal court." Id. Counsel filed declarations from Chris Katers, Mark Thomsen and Chris Trebatoski, other experienced civil rights litigators in the Milwaukee area, who aver that counsel's proposed rates are reasonable. Id. at 11; Dkt. Nos. 181,

182, 183. Counsel also mentions as relevant considerations the opportunity cost of taking the plaintiff's case "while facing a substantial risk of recovering nothing," the devotion of five years' time and resources to the case and counsel's efforts in "exhaustively litigat[ing]" the case. Dkt. No. 178 at 8–9.

Finally, counsel requests a 33 (or 33.33) percent increase from the lodestar amount to reflect the "excellent result" he asserts the plaintiff obtained in this case. Id. at 13–14. Counsel notes the jury's verdict included both compensatory and punitive damages, which he says "vindicated Mr. Spencer's individual constitutional rights while sending a message . . . toward two of the four defendants." Id. at 14. Counsel asserts that the high verdict award against only two of the four defendants "highlight[s] the severity of the issues at hand and the jury's understanding of the violations at stake." Id. at 15. Counsel also asserts that the rejected or failed negotiation attempts demonstrate "the bad faith that the City (i.e. Defendants) exhibited with regards to settlement of this case" and serve as further reason to increase the lodestar amount. Id. Finally, he cites the plaintiff's "diligence and strong-willed belief in his claims" as support for an enhanced fee award. Id. at 16.

B.    The Defendants

The defendants contest several portions of the plaintiff's lodestar calculation. Dkt. No. 187. The defendants first assert that the plaintiff's counsel's "self-serving affidavit" and the affidavits of other attorneys in Milwaukee do not satisfy the plaintiff's burden to justify Attorney Cade's requested rate of $485 per hour of work completed. Id. at 4. They point to the

rate Attorney Cade requested in a recent successful litigation in federal court in March 2020, Harris v. City of Milwaukee, Case 14-cv-1002, in which he petitioned for fees at a rate of $425 per hour. Id. at 6. The defendants ask the court to reduce Attorney Cade's hourly rate to $445 per hour, which they assert properly reflects "inflation and prior civil rights success." Id.

The defendants assert that the plaintiff has not satisfied his burden to justify the proposed rates for Attorney Pusick ($280 per hour) or former partner Carlos Pastrana ($375 per hour). Id. at 6–7. The defendants assert that the court should allow Attorney Pusick to recover only $170 per hour for her work based on her "limited experience as a lawyer, and limited role in the case and jury trial." Id. at 7. The defendants do not suggest a different rate for Attorney Pastrana but assert that the court should determine an appropriate rate for his "minimal" involvement in the case. Id.

The defendants assert that several of the hours for which plaintiff's counsel seeks fees should be excluded from the fee calculation. Id. at 8–9. The defendants specifically ask the court to exclude time that Attorney Cade's legal interns spent observing trial testimony and conferring with trial counsel and time counsel spent "waiting for the verdict." Id. The defendants contend that the court should exclude from the lodestar calculation time counsel spent preparing for and litigating the plaintiff's "unsuccessful claims;" they object to awarding fees for time counsel spent deposing defendant Garland, communicating with the doctors who testified about the July 4, 2011 forced medication of the plaintiff (on which the jury did not return a verdict for the

plaintiff), preparing for those doctors' testimony or reviewing discovery responses from defendants Garland and Valuch. Id. The defendants also ask the court to exclude from payment an hour from July 16, 2022 that counsel billed "to discuss trial win and the next step with Plaintiff's family." Id. at 9.

Finally, the defendants ask the court to reduce the plaintiff's lodestar amount because of his "partial success on the merits" of his claims at trial. Id. at 10. The defendants argue that, although the jury awarded the plaintiff $386,500 at trial, the plaintiff "prevailed on only five of the fifteen listed claims on the verdict form."[1] Id. They also argue that during closing arguments, plaintiff's counsel requested $2.4 million in damages; they assert that the plaintiff therefore received only a "fraction of the amount requested." Id. The defendants ask the court to decrease the plaintiff's lodestar amount by 66.67% to reflect the claims on which the jury did not return a verdict for the plaintiff. Id. at 11. Alternatively, the defendants ask the court to reject the plaintiff's request for a 33% increase in the lodestar amount based on the plaintiff's success at trial and the City of Milwaukee's purported "bad faith" in settlement discussions. Id. at 11–12.

### III. Analysis

#### A.    Hourly Rates

The parties dispute the hourly rate the court should apply in calculating the plaintiff's award of fees. In a non-PLRA case, the court presumes that an

---

[1] The court notes that the plaintiff proceeded on *sixteen* claims, not fifteen as the defendants identify them.

attorney's "actual billing rate for similar litigation is appropriate to use as the market rate." Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 640 (7th Cir. 2011). The "next best evidence" of a reasonable market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." Id. (quotation omitted). The party seeking fees bears the burden of "'produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community.'" Id. (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). Once the fee applicant satisfies this burden, the other party must provide "'a good reason why a lower rate is essential.'" Id. (quoting People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1313 (7th Cir. 1996)).

An attorney's reasonable hourly rate is "'derived from the market rate for the services rendered.'" Id. (quoting Denius v. Dunlap, 330 F.3d 919, 930 (7th Cir. 2003)). But if the court "decides that the proffered rate overstates the value of an attorney's services, it may lower them accordingly." Mathur v. Bd. of Trustees of S. Ill. Univ., 317 F.3d 738, 743 (7th Cir. 2003) (citing Chrapliwy v. Uniroyal, Inc., 670 F.2d 760, 767 (7th Cir. 1982)).

But as explained above, the PLRA drastically limits the hourly rate for counsel because the plaintiff filed the lawsuit himself while he was incarcerated (thus triggering the PLRA per §1997e(h)). Neither party discusses this limit or how the PLRA applies to the plaintiff's request for fees. Accordingly, much of

their arguments over the appropriate hourly rate to use in calculating the lodestar are irrelevant.

      1.    *Attorneys Cade, Pusick and Pastrana's Hourly Rates*

The plaintiff's motion proposes an hourly rate of $485 for work performed by Attorney Cade, which he avers is within his current hourly rate; an hourly rate of $280 for work Attorney Pusick performed, which is within her current hourly rate; and an hourly rate of $375 for Carlos Pastrana, which is within his billing rate when he was a partner at Attorney Cade's law office. Dkt. No. 178 at 4; Dkt. No. 179 at ¶¶7, 12–13. Each of those proposed rates is higher than the maximum allowed under §1997e(d)(3), which as the court explained above ranges from a minimum of the CJA hourly rate from year to year ($140 to $158 at various points between November 8, 2018 and the present) to a maximum of 150% of that hourly rate from year to year ($210 as of November 8, 2018 up to $237 at present). Although the plaintiff's counsel bears the burden of producing evidence supporting the hourly fee he seeks, the plaintiff's counsel has not accounted for the PLRA limitations in his hourly rate calculations. The court can imagine, given his arguments in support of the rates he *did* request, that had the plaintiff's counsel taken into account the limits under the PLRA, he would have argued that he should receive the full, 150% maximum hourly rate allowed under the PLRA. But the court has neither the benefit of those arguments nor calculations of the lodestar based on the applicable CJA rates during the various periods covered by plaintiff's counsel's representation. It is not the court's responsibility to calculate the lodestar in the first instance; the

plaintiff bears that burden. The court will require the plaintiff to amend the motion to calculate the hourly rates for each lawyer based on the limited rates mandated by the PLRA, because that is "the absolute cap" allowed under §1997e(d)(3). <u>Johnson</u>, 339 F.3d at 584.

2. *Other Staff Hourly Rates*

The plaintiff's motion also seeks fees for work performed by a paralegal and three interns at Attorney Cade's law office. Dkt. No. 178 at 4. Attorney Cade's declaration provides a brief description of these staff members and their qualifications.

> 14. Melissa Richer currently is a paralegal with Cade Law Group. She also worked as a paralegal at Habush Habush & Rottier, Gruber Law Office LLC and the Kenosha County District Attorney[']s Office. and Gimbel Reilly Guerin & Brown, LLP. She is a 2014 graduate of Carthage College. Her current hourly rate is between $150-170 per hour.
>
> 15. Madison Bedder is a current summer intern at Cade Law Group. She will begin her third-year at Marquette University Law School in the Fall 2022, and she is a 2020 graduate of the University of Alabama. She previously interned with Birdsall Obear & Associates LLC before beginning work for Cade Law Group.
>
> 16. Mohammad ("Mo") Ahmad is a current summer intern at Cade Law Group. He will begin his third-year at the University of Wisconsin Law School in the Fall of 2022. He is a 2021 graduate of the University of Illinois-Chicago.
>
> 17. Leah Birch was a former summer intern at Cade Law Group during the Summer of 2020. She is a 2021 graduate of Marquette University Law School, and a 2018 graduate of the University of Wisconsin-Green Bay. Ms. Birch currently works as an associate counsel for ORBIS Corporation in Hartland, Wisconsin.

Dkt. No. 179 at ¶¶14–17. None of these staff provided their own declarations, and the plaintiff filed no other evidence justifying their proposed hourly rates.

14

Attorney Cade's declaration provides Ms. Richer's employment background and her current hourly rate of between $150 and $170. Dkt. No. 179 at ¶14. The court finds that that range is reasonable for paralegal work. Curiously, the plaintiff's motion and attached invoice quote a rate of $175 for Ms. Richer's work—$5 per hour *more* than her purported current rate. Dkt. No. 178 at 4; Dkt. No. 179-2 at 10. The defendants do not object to Ms. Richer's proposed rate or contest the fees attributed to her work, perhaps because she billed only 0.2 hours for her work on the case. Id. The court will accept Attorney Cade's declaration regarding Ms. Richer's current hourly rate and will reject the $175 per hour quoted in the motion and invoice. The court will reduce the hourly rate for Ms. Richer's work to $170 per hour.

Attorney Cade's declaration does not specify whether Ms. Bedder, Mr. Ahmad and Ms. Birch were paid or unpaid interns. Plaintiff's counsel seeks $150 per hour for each intern's work on the case, but there is no evidence in the record justifying this hourly rate (and, for what it is worth, it exceeds the CJA hourly rate for licensed lawyers in several of the relevant years). Attorney Cade's declaration—the only evidence about the interns' experience—says nothing about the interns' relevant trial or litigation experience (if they even have any). The plaintiff's reply brief asserts that the interns (to whom plaintiff's counsel now refers as "summer associates") "observed the trial at various points, and provided valuable counsel to Attorneys Cade and Pusick during breaks and over lunch to assist with trial strategy;" "provided insights into their observation of jurors, what questions and points raised appeared to 'score

15

points' with the jurors, and themes to be used for the closing;" and, specific to Mr. Ahmad, "served a valuable function in that he served as a potential arrestee in the demonstration with Defendant Knight with regards to the 'special search techniques' that both Knight and Vagnini used." Dkt. No. 188 at 4–5. The court acknowledges that interns may provide valuable assistance for trial attorneys during trial. But the plaintiff provides no *evidence* justifying the proposed rate of $150 per hour for the interns' assistance, and it is his burden to do so.

The court found few cases discussing a reasonable rate for billing the work of interns, whether they were unpaid or paid. The Seventh Circuit noted that it would be "highly unusual for a district court to order a defendant to pay for work that was performed at no cost to a plaintiff or to his attorneys." Kitchen v. TTX Co., 284 F.3d 688, 692 (7th Cir. 2002). The Seventh Circuit remanded that case to the district court "to determine the amount of costs that were generated by unpaid interns." Id. On remand, the plaintiff's counsel provided an affidavit averring that the interns were paid for their work. See N.D. Ill. Case 97-cv-5271, Dkt. No. 368.

Since the decision in Kitchen, however, other district courts in this circuit have found billing rates between $90 per hour and $175 per hour to be reasonable for law-student interns like those in this case. See Medrano v. Alaniz Grp., Inc., No. 11 C 1915, 2013 WL 360523, at *1 (N.D. Ill. Jan. 30, 2013) (finding "several law-student interns at billing rates ranging from $125 to $175 per hour" to be reasonable); Wirtz v. City of S. Bend, Ind., No. 3:11-CV-

325-RLM-CAN, 2012 WL 589454, at *3 (N.D. Ind. Feb. 17, 2012) (finding $90 per hour "a reasonable market rate for the work of an intern"); <u>Dupuy v. McEwen</u>, 648 F. Supp. 2d 1007, 1016 (N.D. Ill. 2009) (noting, but not expressing opinion on, billing rates for "paralegals and interns between $85/hour and $175/hour"), amended <i>sub nom.</i> <u>Dupuy v. McEwan</u>, No. 97 C 4199, 2009 WL 10740693 (N.D. Ill. Dec. 21, 2009). These somewhat recent cases provide a basis for the court to find a reasonable hourly rate for the interns to bill for their time worked on this case.

The plaintiff has not met his burden to justify awarding fees of $150 per hour for the interns' work. Because the interns may have provided helpful assistance to Attorneys Cade and Pusick during their trial presentation, however, the court will allow the plaintiff to recover fees for the interns' time. The court has considered Attorney Cade's proposed rate of $150 per hour, the cases cited above, the passage of time since those cases were decided and the different legal communities in which the interns worked (Chicago, Indianapolis and Washington, D.C., in the cases cited above compared to Milwaukee in this case). The court finds an hourly rate of $90 is reasonable for the interns' time worked on this case.

B.    <u>Excludable Hours</u>

The defendants ask the court to exclude time plaintiff's counsel and staff spent on a variety of activities; this includes time Attorney Cade's interns spent sitting in on and observing the trial, time trial counsel spent "waiting for the verdict" (but not the time spent addressing jury questions and issues) and time

17

spent researching and preparing claims on which the plaintiff was unsuccessful at trial.

The Supreme Court has instructed "that parties submitting fee requests 'should make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.'" Vega v. Chi. Park Dist., 12 F.4th 696, 704 (7th Cir. 2021) (quoting Helsley, 461 U.S. at 434). The court will review the defendants' objections and the plaintiff's invoice of hours spent on this litigation and exclude "excessive, redundant, or otherwise unnecessary" hours in an effort "'of trimming fat from'" the plaintiff's fee application. Id. at 705 (quoting Nichols v. Ill. Dep't of Transp., 4 F.4th 437, 441 (7th Cir. 2021)).

1.  *Interns' Time*

Plaintiff's counsel seeks 13.2 hours for Ms. Bedder's participation in this case and 7.3 hours for Mr. Ahmad.[2] Dkt. No. 178 at 4. Ms. Bedder billed her time to "Observe trial testimony and confer with NCade and APusick to strategize for trial, as well as whether additional research is necessary." Dkt. No. 179-2 at 9 (entries of 7/12/2022 and 7/13/2022). Mr. Ahmad similarly

---

[2] The plaintiff's motion seeks only 7.3 hours of recoverable time for Mr. Ahmad for his time observing trial on July 12, 2022. Dkt. No. 178 at 4. But Attorney Cade's expense report shows Mr. Ahmad billed for a total of 17.3 hours across *three* days of observing trial. See Dkt. No. 179-2 at 9–10 (entries of 7/12/2022, 7/13/2022 and 7/14/2022). It is possible that when calculating the lodestar amount, plaintiff's counsel missed the other days during which Mr. Ahmad observed trial. Because the court is reducing Mr. Ahmad's recoverable hours, as explained below, however, this calculation error is immaterial.

billed his hours as "Attend trial and meetings with Attorneys Cade and Pusick to discuss strategy." Id. (entry of 7/13/2022). As the defendants argue, neither intern billed any time for pretrial research work, investigation, witness preparation, document review or drafting of motions or other legal papers. Dkt. No. 187 at 8.

The court agrees with plaintiff's counsel that Ms. Bedder and Mr. Ahmad's participation was of use to counsel. The court finds that the interns' time spent in discussions with counsel is recoverable because it may have affected and influenced counsel's trial strategy or preparation. But time the interns spent merely observing the trial is not recoverable. If it were, an unscrupulous attorney could recruit an army of unpaid interns, have them sit in court during trial and then seeks hundreds (if not thousands) of dollars in fees for the time those unpaid interns sat passively in the courtroom. The court should not construe §1988 to permit such a windfall. See Warfield v. City of Chi., 733 F. Supp. 2d 950, 959 (N.D. Ill. 2010) ("While gaining experience by observing the trial was undoubtedly beneficial . . . Plaintiffs have not shown that these hours were 'reasonably expended.'"). The court will reduce the recoverable time for Ms. Bedder from 13.2 hours to 2.0 hours and for Mr. Ahmad from 7.3 hours to 3.0 hours —one hour each for the days they observed the trial and conferred with counsel.[3]

---

[3] The court recognizes Mr. Ahmad for his willingness to be a living demonstrative exhibit during the testimony of defendant Knight. The court acknowledges this demonstration may have been valuable for plaintiff's counsel, but it is not an experience the defendants should have to finance. Whether this was a "valuable" experience for Mr. Ahmad, as the plaintiff

Ms. Birch spent more time on the case. The plaintiff's invoice shows that Ms. Birch billed 43.2 hours in June 2020 to review the defendants' reply to the plaintiff's response to the defendants' motion for partial summary judgment, research and prepare a sur-reply, research and draft a Rule 11 motion and prepare a case summary. Dkt. No. 179-2 at 5 (entries of June 3–5, 8–10, 17–19 and 22, 2020). But the plaintiff did not file a sur-reply to the defendants' motion for summary judgment; the defendants filed their reply on May 14, 2020, and the court entered its order granting the summary judgment motion on March 24, 2021. Dkt. Nos. 131, 134. Nor did the plaintiff file a Rule 11 motion in June 2020 (or at any other time). The invoice shows only that Attorney Cade contacted defense counsel about a "Rule 11 motion re: Chief Ed Flynn's lack of knowledge about strip searches." Dkt. No. 179-2 at 6 (entry of 7/9/2020). The defendants have not objected to Ms. Birch's billed time, but the plaintiff's counsel says nothing about Ms. Birch's work to justify allowing recovery for 43.2 hours.

The court ultimately granted the defendants' motion for partial summary judgment without the plaintiff filing a sur-reply (or asking to file one). But that motion did not seek judgment for defendants Vagnini, Knight, Valuch or Garland; the defendants instead conceded that "there are genuine issues of material fact precluding summary judgment on the claims against those defendants." Dkt. No. 134 at 8. That means Ms. Birch's work preparing an

_____

suggests, may be up to Mr. Ahmad to determine for himself, and the reason that law students take unpaid internships is because they receive remuneration in the form of valuable experiences. Dkt. No. 188 at 5.

ultimately un-filed sur-reply had no effect on the plaintiff's ultimate success. Nor has the plaintiff provided the court with any evidence that the ultimately unfiled Rule 11 motion on which Ms. Birch worked impacted the plaintiff's success. Perhaps the plaintiff gave former defendant Flynn notice of the motion and that caused the defendant to act, or refrain from acting, in some way that benefitted the plaintiff, but the plaintiff has not provided any evidence of that.

Ms. Birch was an unpaid intern who worked on the case for Attorney Cade's office during a few weeks in June 2020. The court finds that granting a full recovery for the 43.2 hours Ms. Birch spent preparing unfiled and immaterial pleadings would be excessive. The court will strike from Ms. Birch's recoverable hours all time she spent researching for or preparing those pleadings. That includes all hours from June 3–5, 8–10 and 17, 2020; and 1.5 hours from June 19, 2020. The court will allow the plaintiff to recover only the time Ms. Birch spent working with Attorney Cade on her case summary: 2.9 hours on June 18, 2020; 2.9 hours on June 19, 2020; and 2.7 hours on June 22, 2020, for a total of 8.5 hours.

### 2. Counsel's Time "Waiting for the Verdict"

The defendants contest time Attorneys Cade and Pusick spent "waiting for the verdict" on July 15, 2022. Dkt. No. 187 at 8. They agree counsel may recover "time spent in court addressing jury questions and issues" but assert that "to bill for time in a block entry while waiting for a verdict is unreasonable." Id. The defendants cite Lopez v. City of Chi., No. 01 C 1823, 2007 WL 4162805 at *5, n.1 (N.D. Ill. Nov. 20, 2007), which states, "Some of

these entries also identify additional activities by counsel, but fail to specify how much time was spent on each task and therefore must be stricken in their entirety." Defense counsel does not explain how this footnote is relevant. The court presumes defense counsel meant to argue that the court should strike in their entirety Attorney Cade's July 15, 2022 entry for "attend trial, day 5 (12.3)" and Attorney Pusick's 12.4 hour entry the same day for "Trial Day 5; wait for jury verdict; meeting with client after jury verdict" because they do not explain what part of those hours was spent "waiting for the verdict" rather than in court addressing jury questions and issues. Dkt. No. 179-2 at 10.

District courts in the Seventh Circuit disagree on whether attorneys may recover fees for hours spent awaiting the jury's verdict. Compare Stragapede v. City of Evanston, 215 F. Supp. 3d 708, 720 (N.D. Ill. 2016) (allowing full recovery of 11.0 hours billed for final day of trial, during which counsel likely spent a portion "waiting for a jury verdict"); Cherrone v. Snyder, No. 17-CV-232-JRS-DLP, 2021 WL 4355387, at *5 (S.D. Ind. Sept. 24, 2021) (finding "21 hours in attorney fees for waiting [for the jury] . . . unreasonable under the circumstances" but allowing recovery for half of those hours); with LaSalvia v. City of Evanston, No. 10 C 3076, 2012 WL 2502703, at *3 (N.D. Ill. June 28, 2012) ("[C]ounsel's time appears to include time awaiting the jury's verdict, which courts have held is not compensable."); Warfield, 733 F. Supp. 2d at 960 (deducting nine hours spent "waiting for the verdict" because "these hours were not 'reasonably expended'"); Ward v. Tipton Cty. Sheriff Dep't, 937 F. Supp. 791, 801 (S.D. Ind. 1996) (disallowing "reimbursement for five hours spent

waiting for the jury to return a verdict"). These decisions often hinge on the practicality of expecting attorneys to perform other work during the time spent awaiting the verdict. See Stragapede, 215 F. Supp. 3d at 720 (noting that "the timing of closing arguments and the Court's instructions to the lawyers [to stay in the courthouse] would have made it unreasonably difficult to work on other matters"); Cherrone, 2021 WL 4355387, at *5 (awarding only half of counsel's request for hours spent waiting for the jury during twenty-one hours over two days).

The court did not order counsel to remain in the courthouse for the jury's verdict; it asked only that they remain close to their cell phones so the court could alert them when the jury had reached a verdict. Defense counsel did leave the courthouse; on one occasion the court (and defense co-counsel) had difficulty reaching one of the defense attorneys to request his return to the court for a jury issue or question. Attorneys Cade and Pusick remained at the courthouse for all or nearly all the jury's deliberations, mostly sitting in the courtroom. The court knows this because court staff observed or spoke with plaintiff's counsel several times during the afternoon and evening.

The court kept detailed minutes for each day of the trial. Dkt. No. 175. Those minutes show that the parties spent the morning of July 15, 2022 in court discussing the verdict form and jury instructions, hearing the court instruct the jurors and presenting closing arguments. Id. at 8. The jury began deliberations at 12:04 p.m. Id. at 1. The parties appeared on the record to address a jury question from 1:21 to 1:27 p.m., after which the jury continued

deliberating. Id. at 1, 8. The parties again appeared from 4:15 to 4:22 p.m. to discuss whether to "let the jurors know that they could either continue to deliberate this evening or return on Monday." Id. at 1, 8–9. The jury continued to deliberate and returned its verdict that evening shortly before 8:00 p.m.; the court released the jury and adjourned at 8:04 p.m.[4] Id. at 1, 9. The court finds that the parties spent approximately 7.7 hours awaiting the jury's verdict—from 12:04 to 1:21 pm (1.3 hours), 1:27 to 4:15 p.m. (2.8 hours) and 4:22 to 8:00 p.m. (3.6 hours).

The court agrees with defense counsel that plaintiff's counsel should not be allowed to recover the full amount of time spent waiting for the jury to return its verdict. Counsel could have (and may have) conducted other business during the periods between jury questions and issues, for which the court requested their presence in the courtroom. But neither will the court strike counsel's entire request for time spent awaiting the verdict during the final day of trial. On two occasions, the court required counsel to return to the courthouse for jury questions. The lawyers did not spend 7.7 hours doing nothing but waiting for the verdict. For part of that time, they were required to respond to the court's requests and questions. The court also recognizes the physical and mental exhaustion the attorneys likely experienced during the final afternoon of an emotional, five-day trial. The court does not expect that counsel had a super-human ability to compartmentalize the preceding four

_____

[4] In calculating these hours, the court also relied on court staff's contemporaneous notes taken during the trial.

days and to immediately turn their full attention to other matters. The court will allow Attorneys Cade and Pusick to recover approximately half of their billed hours spent waiting for the verdict on July 15, 2022 (3.9 hours) and will deduct the remaining 3.8 hours from each.

### 3. *Unsuccessful Claims*

The defendants assert that the time the plaintiff's counsel spent on "the unsuccessful claims should be subtracted from the Plaintiff's petition for legal fees." Dkt. No. 187 at 8. The defendants contend the plaintiff should not recover "any costs related to depositions, travel, and other expenses incurred in pursuing the unsuccessful claims." Id. at 8–9 (citing Hensley, 461 U.S. at 440). The defendants specifically ask the court to exclude 5.9 hours that plaintiff's counsel spent deposing defendant Garland, communicating with Drs. Quinn and Riepenhoff, preparing for the doctors' testimony, drafting subpoenas for the doctors and reviewing the discovery responses of defendants Garland and Valuch. Id. at 9.

Plaintiff's counsel asserts the court should award fees for the full amount of time spent on these unsuccessful claims because that time also was spent pursuing the ultimately successful claims, including the false arrest claim against defendant Valuch. Dkt. No. 188 at 5. Counsel asserts that the court should not focus on which of the plaintiff's claims were successful but on "whether Plaintiff's actions and arguments were reasonable." Id. at 6 (citing People Who Care, 90 F.3d at 1314).

The plaintiff's position incorrectly focuses on arguments "made in support of an ultimately successful claim." Id. (quoting Jaffee v. Redmond, 142 F.3d 409, 413 (7th Cir. 1998)). Plaintiff's counsel's actions in communicating with the doctors and preparing for their testimony were in support of ultimately *unsuccessful* claims—the plaintiff's Fourth Amendment claims of an unreasonable search and seizure and excessive force against defendants Valuch and Garland on July 4, 2011. The jury returned a verdict in favor of the defendants on those claims. Dkt. No. 176 at 3–4. The jury returned a verdict in the plaintiff's favor only on the claim of unlawful *arrest* against defendant Valuch. Id. at 4.

But neither is the defendants' position correct. It is true that the court "should not award attorneys' fees for work on an unsuccessful claim 'that is distinct in all respects from [the plaintiff's] successful claim.'" Vega, 12 F.4th at 703 (quoting Hensley, 461 U.S. at 440). But neither should the court exclude fees for work on a lawsuit that "'consists of related claims[;] a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.'" Id. (quoting Hensley, 461 U.S. at 440). Related claims "involve a common core of facts *or* are based on related legal theories;' there is no requirement that '*both* facts *and* law' be in common." Id. (quoting Ibrahim v. U.S. Dep't of Homeland Sec., 912 F.3d 1147, 1174 (9th Cir. 2019)).

That the jury did not award the plaintiff a verdict on all his claims against Valuch and Garland does not necessarily mean that counsel's time

spent preparing for or researching the unsuccessful claims is non-compensable. The jury found in favor of the plaintiff on his claim that defendant Valuch falsely arrested him on July 4, 2011. That claim is related to, and arose from, the same common core of facts as the plaintiff's other Fourth Amendment claims against Valuch and his claims against Garland. Garland testified that he was present when Valuch seized the plaintiff and took him to the hospital, and he remained at the hospital with Valuch and the plaintiff until he left the hospital late that night. Because Garland was present during much of Valuch's interaction with the plaintiff, it was reasonable for plaintiff's counsel to depose Garland about his involvement and his observations of Valuch's conduct. Defense counsel has not parsed out the hours plaintiff's counsel spent questioning Garland on the unsuccessful claims versus the successful one. Because it was reasonable for counsel to question Garland about the July 4, 2011 incident on which the plaintiff was partially successful, the court finds that the hours counsel incurred investigating the claims against Garland are reasonably included in the lodestar calculation. For the same reasons, the court will include Attorney Pusick's time spent reviewing Garland and Valuch's discovery responses on July 7, 2022. Dkt. No. 179-2 at 9.

The time counsel spent communicating with and preparing for testimony from the doctors also is recoverable. Counsel's discussions with the doctors involved the plaintiff's claim that defendants Valuch and Garland unreasonably searched him or used excessive force on him when they made him drink medication that forced him to defecate from July 4 to 5, 2011. Plaintiff's

counsel called the doctors to testify only to the facts underlying those unsuccessful claims. The jury concluded the defendants did not violate the plaintiff's rights. But those unsuccessful claims "had a common core of facts or a factual nexus with the claim on which [the plaintiff] prevailed"—his Fourth Amendment claim of false arrest against Valuch. Vega, 12 F.4th at 704 (quotation marks omitted). The facts regarding the July 4, 2011 incident showed that over the course of several hours, defendants Valuch and Garland stopped the plaintiff, believed they saw him ingest something, took him to the hospital, forced him to drink medication that caused him to defecate and then arrested him and took him to the police station even though no drugs were found in his stomach or stool. That the defendants found no drugs on the plaintiff during these events "may have provided context for the jury" to find in favor of the plaintiff on his false-arrest claim. Id. (quotation marks omitted).

It was reasonable for counsel to pursue the plaintiff's unsuccessful Fourth Amendment claims. The defendants did not challenge those claims against Valuch and Garland in a motion for summary judgment, and they involved distinct facts from the allegations against defendants Vagnini and Knight and occurred on a different day. That the jury decided against the plaintiff on some of these claims does not mean that it was inappropriate for counsel to investigate and press all claims at trial. To the contrary, the plaintiff retained counsel to pursue legal action on behalf of an incarcerated person who, up to that point, had been representing himself. It was incumbent on counsel to pursue all possible avenue of legal recompense for his client. See

Jaffee, 142 F.3d at 417 (quoting Model Rules of Professional Conduct 1.3 cmt. 1 (1983) ("A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf.").

The court finds that the hours counsel spent communicating with the doctors in preparation for trial on the plaintiff's Fourth Amendment claims of unlawful search and excessive force are recoverable even though those claims ultimately were unsuccessful. The court will not exclude these hours from the lodestar calculation.

### 4. *Mathematical Errors and Unsupported Time*

The court has reviewed carefully the plaintiff's counsel's record of services. Dkt. No. 179-2. That document is structured in six columns: the name of the attorney performing the services; the date the services were performed; a description of the services performed with the amount of time spent performing each individual service on that date; the total amount of time spent on that date; the attorney's hourly rate; and the total fee sought for that date. There are discrepancies and mathematical errors from column to column, and counsel bills for some time with no explanation of what service was performed during that time. The court makes the following exclusions from counsel's fee application.

Attorney Cade twice has sought payment for 0.9 hours drafting a letter to the court "regarding notice of appearance, request for mediation and changing caption." Dkt. No. 179-2 at 2. In his November 2, 2018 entry, he described four services performed totaling 7.90 hours; one of those services was "draft letter to

Judge Pam Pepper regarding notice of appearance, request for mediation and changing caption regarding Jeffrey Cline to correct his name," which Attorney Cade indicated took .9 hours. Id. On November 8, 2018 (six days later), he described three services performed totaling 1.90 hours; one of those services was "letter to Judge Pepper regarding notice of appearance and error in caption (.9)." Id. Attorney Cade filed only one letter that matches this description, and he filed it on November 8, 2018—the date of the second entry. Dkt. No. 96. The letter notes the error in the caption, misnaming then-defendant Cline as "Jeffrey Kline." Dkt. No. 96 at 1. The letter is two pages long and includes reference to several cases in which Cline was a named defendant. Id. at 1–2. The court finds that 0.9 hours is a reasonable time to bill for preparation of this letter, but it appears that the record of services twice asks for payment for the same .9 hours to draft this letter. The court will exclude the second 0.9 hours from Attorney Cade's lodestar calculation.

In the November 12, 2018 entry, Attorney Cade described two services performed that totaled 3.40 hours; the description indicates that he spent 1.6 hours to review an April 10, 2015 order from another judge regarding defendant Vagnini and 1.1 hours to review an order in a previous case involving that defendant. Dkt. No. 179-2 at 3. That amounts to 2.7 billable hours; the 3.7 hours listed in the "total" column appears to be a typographical error (or a mathematical one). The court will award payment for 2.7 hours for the work performed on November 12, 2018.

The February 12, 2019 entry requests payment for 0.5 hours for attending an 11:30 a.m. telephone status conference with Judge Duffin to schedule a mediation with the defendants. Id. The court minutes for that conference show that it lasted only eleven minutes—from 11:33:19 to 11:44:16 a.m. Dkt. No. 103. Even assuming that Attorney Cade appeared on the phone five minutes before the start of the conference (sometime around 11:25 a.m.), that amounts to approximately twenty minutes, or 0.4 billable hours. The court will exclude 0.1 hours for this conference.

The April 22, 2019 entry describes two tasks and lists a total time worked of 5.20 hours. Id. at 4. The description indications: "(1.)" hours to review Vagnini cases to determine a proper settlement and 4.1 hours to draft a settlement demand letter to Judge Duffin. Id. at 4. The time in the description totals 5.1 hours, but the amount of time listed in the "total" column is 5.2 hours. Id. It is possible the "(1.)" notation is a typo and should read "1.1" hours. But because the invoice as presented does not account for the missing .1 hours, the court will exclude that time from the lodestar amount.

The July 29, 2019 entry indicates that Attorney Cade spent 8.6 hours on two tasks. Id. The description indicates that he spent 1.5 hours each deposing defendants Valuch and Knight. Id. That totals only 3.0 hours, while the amount of time listed in the "total" column is 8.6 hours. There is no description of what Attorney Cade did during the remaining 5.6 hours. The next day, Attorney Cade deposed three other officers and accounted for the full 6.9 hours of time he billed (3.1 hours, 1.5 hours, 1.8 hours, 0.5 hours). Id. (entry of

7/30/2019). The same occurred in the August 13, 2019 entry for 5.4 hours depositing three more officers and preparing for their depositions (2.5 hours, 1.3 hours, 1.0 hours, 0.6 hours). Id. The court will exclude 5.6 hours of time from July 29, 2019 because the service record does not describe any services performed during those hours.

In September 2021, Attorneys Cade and Pusick each billed 0.6 hours to draft a writ of *habeas corpus ad testificandum* or a motion or order related to that writ. Id. at 6 (entries of 9/16/2021 and 9/20/2021). The court *sua sponte* issues writs of *habeas corpus ad testificandum* to order the warden of the institution where an incarcerated party or witness is held to produce that person at the courthouse at the relevant date and time. In this case, the court did so on December 30, 2021. Dkt. No. 150. The court did not rule on the two motions plaintiff's counsel filed. Dkt. Nos. 145, 147. The court terminated those motions without comment. Counsel is not entitled to fees for time spent on these motions because they were unnecessary. The court will exclude 0.6 hours from both Attorney Cade and Attorney Pusick's fee calculations.

The February 7, 2022 entry reflects a total of .7 hours spent on two tasks. Dkt. No. 179-2 at 7. The description indicates that Attorney Pusick spent .4 hours contacting a records department to locate criminal trial transcripts and .2 hours discussing options and leaving a voicemail message with the transcript office. Id. That totals only .6 hours. The court will exclude from Attorney Pusick's lodestar amount the unaccounted-for 0.1 hour.

The February 8, 2022 entry for Attorney Pusick lists two tasks and reflects a total of .7 hours spent performing those tasks. Id. The description indicates that Attorney Pusick spent .5 hours in a court hearing discussing the case status and a new trial date. Id. Attorney Cade's February 8, 2022 entry lists four tasks and reflects a total of 1.3 hours spent on those tasks. Id. The description includes .6 hours preparing for and attending the hearing referenced in Attorney Pusick's February 8, 2022 entry. Id. The court's minutes from this conference show it lasted from 2:35 to 2:48 p.m. Dkt. No. 162. Even assuming that Attorney Cade spent ten minutes preparing for the hearing, that would total less than thirty minutes of billable time for Attorney Cade (from approximately 2:20 to 2:48 p.m.); Attorney Pusick mentioned no preparation time, so she would have spent only .2 hours attending the hearing. The court will award fees for .2 of Attorney Pusick's time and .3 of Attorney Cade's time for this hearing—a total of .5 hours, not the 1.1 hours reflected in the "total" column.

On several dates, the description of the services performed by Attorney Pusick describes less time than is reflected in the "total" column—usually 0.1 fewer hours. The April 7, 2022 entry describes 0.5 hours reviewing the case file and organizing materials for trial and 1.4 hours "outlining witnesses." Dkt. No. 179-2 at 7. That amounts to 1.9 hours, but the amount listed in the "total" column is 2.0 hours. Id. The June 27, 2022 entry describes 1.9 hours spent reviewing documents and conferencing with Attorney Cade ahead of a meeting with the plaintiff; the amount listed in the "total" column is 2.0 hours. Id. at 8.

The same difference appears in two of Attorney Pusick's July 5, 2022 entries. The first entry describes 2.4 hours reviewing documents and preparing for trial, but the "total" column lists 2.5 hours. Id. The second entry describes 1.3 hours to draft a letter about the plaintiff's placement in segregation and contact the court to make sure he will be present for trial, but the "total" column lists 1.4 hours. Id. This issue arises again in the July 6, 2022 entry; the description says that Attorney Pusick spent .3 hours reviewing documents and .7 hours preparing a direct examination outline. Id. at 9. That is a total of 1.0 hours, but the "total" column lists 1.1 hours. Id. The July 7, 2022 entry describes 0.1 hours to review the file and prepare for trial and 1.0 hours to review discovery responses from defendants Garland and Valuch. Id. That totals 1.1 hours, but the "total" column reflects 1.2 hours. Id. The July 8, 2022 entry describes 1.0 hours to prepare for trial and review discovery responses from defendants Knight and Vagnini, but the "total" column reflects 1.1 hours. Id. The court will exclude a total of 0.7 hours from Attorney Pusick's lodestar amount.

The July 10, 2022 entry indicates that Attorney Pusick spent 1.2 hours preparing for trial and reviewing the jury pool list, 1.0 hours researching the jurors on CCAP and 0.6 hours preparing an excel sheet containing that information. Id. That amounts to 2.8 hours, but the "total" column lists 3.1 hours. Id. The court will exclude 0.3 hours from Attorney Pusick's lodestar amount.

Attorneys Cade and Pusick list time spent attending day two of the trial; Attorney Pusick's entry describes 8.0 hours for "Trial Day 2; participate and assist with trial; discussions with client," but Attorney Cade's entry lists 9.3 hours for "Attend trial – day 2 (9.3) . . . ." Id. (entries of 7/12/2022). Even accounting for differences in travel time for the two lawyers, the time they spent attending the trial should be similar. The court's minutes from the trial reflect in-court time on July 12, 2022, of approximately six hours—from 9:10 a.m. to 12:04 p.m., and from 1:15 p.m. to 4:20 p.m. Dkt. No. 175 at 1. But the court recalls plaintiff's counsel being present before the jury was brought into the courtroom, and the court asked counsel to be present after the jury left for the day to discuss missing witnesses and a possible missing witness instruction. Id. at 4–5. It is reasonable for counsel to have billed time for day two of trial as early as 8:00 a.m. to travel to the court ahead of the planned 8:30 a.m. start time and as late as 5:00 p.m. for the late end time. That would account for Attorney Pusick's 8.0 hours of billed time and up to 9.0 hours of Attorney Cade's 9.3 hours. But that does not explain the 1.3 difference between counsel's billed hours. Perhaps Attorney Cade billed for work completed over the lunch hour, and Attorney Pusick did not. The court will not speculate into these possibilities. The court will exclude 0.3 hours from Attorney Cade's 9.3 hours of billed time to account for the time spent on trial matters for day two but will not alter Attorney Pusick's billed hours.

The July 13, 2022 entries—for the third day of trial—reflect that Attorney Pusick spent 8.5 hours to "Trial Day 3; assist and participate in trial matters."

Dkt. No. 179-2 at 9-10. Attorney Cade's entry describes 9.6 hours to "Attend trial – day 3, including meeting with Judge Pepper and counsel in chambers to discuss Vagnini statements." Id. The court's minutes from day three of trial show approximately seven hours of in-court time (8:31 a.m. to 12:01 p.m., 1:01 p.m. to 4:55 p.m.). Dkt. No. 175 at 1. The court also held a conference with counsel following the close of in-court presentations, and the minutes reflect that conference. Id. at 7. Including time for travel to the court, day three may have provided 9.5 hours of recoverable time (roughly 8:00 a.m. until 5:30 p.m.). Given the irregularities of the third day of trial, the court will not exclude any hours from Attorney Cade or Attorney Pusick's billed time for this day.

Attorney Pusick's first entry for July 14, 2022 (the fourth day of trial) describes .5 hours of research the special verdict form, .1 hours reviewing a court email and .1 hours sending an email to Attorney Cade reflecting research on that issue; that totals .7 hours, but the "total" column lists 0.8 hours. Id. at 10. The court will exclude 0.1 hours from Attorney Pusick's lodestar amount.

Attorneys Pusick and Cade again billed different time for day four of trial (8.5 hours for Pusick, 9.2 hours for Cade). Id. (entries of 7/14/2022). The court's minutes show approximately seven hours of in-court time on day four of trial, but the minutes again note extra time the court conferenced with counsel. Dkt. No. 175 at 1, 7–8. For the same reasons explained above, the court will not exclude any of this time from either of plaintiff's counsel's lodestar amounts.

Attorney Pusick's July 21, 2022 entry describes 0.5 hours researching a motion for attorney's fee and costs and .1 hours forwarding that motion to Attorney Cade—a total of .6 hours, but the "total" column reflects 0.7 hours. Id. The court will exclude 0.1 hours from Attorney Pusick's lodestar amount.

Attorney Cade's final entry on July 22, 2022 describes .5 hours drafting an outline for the fee petition and 1.2 hours reviewing the draft petition—a total of 1.7 hours, but the "total" column lists only .6 hours. Id. The court will assume that Attorney Cade discounted the total amount of time spent preparing the fee petition, unless he indicates otherwise in the amended motion.

Finally, the parties agree that the 0.6 hours Attorney Cade billed on July 16, 2022 for discussing the verdict with the plaintiff's mother and aunt should be excluded from any fee award. Dkt. No. 187 at 9; Dkt. No. 188 at 7. The court will exclude those 0.6 hours from Attorney Cade's lodestar calculation. The court similarly will exclude the 0.6 hours Attorney Cade billed to speak with the plaintiff's family on July 13, 2022. Dkt. No. 179-2 at 10.

The court already has indicated that it is going to require the plaintiff's counsel to amend his motion to correctly calculate the hourly rates based on the PLRA restrictions. It will also require the plaintiff's counsel to make the adjustments and exclusions identified above, or to provide the court with explanations for the discrepancies/math errors/typographical errors that would justify including the time.

C.    Adjustments: Partial Success and Bad Faith

Plaintiff's counsel asserts the court should enhance the award of fees by an additional 33.33% because of the plaintiff's "extraordinary recovery" at trial and the City of Milwaukee's refusal to accept the agreed-upon settlement or "bad faith" for refusing to accept the settlement. Dkt. No. 178 at 4, 15–16. Counsel discusses the Milwaukee Common Council's Judiciary–Legislative Committee hearing, during which an alderman forcefully rejected the settlement and refused to approve "offering one dime in this case. Not one nickel." Id. at 7 (quoting from the January 24, 2022 Committee Hearing, https://milwaukee.granicus.com/MediaPlayer.php?view_id=2&clip_id=3043 at 59:01 to 59:28). Plaintiff's counsel asks the court to enhance the fee award based in part on the Common Council's "ill will, spite, hubris or arrogance in a particular legal position." Id. at 8.

Defense counsel asserts the court should *decrease* the fee award by 66.67% because the plaintiff succeeded on only some of his claims and because his counsel requested significantly more ($2.4 million) in closing argument. Dkt. No. 187 at 10–11. The defendants contend that the court should not consider any "bad faith" by the City in deciding whether to adjust the fee award. Id. at 11. They assert the City was free to pursue "a legal strategy to take the case to trial and not settle" and should not be punished for doing so. Id.

A prevailing party who obtains "exceptional success" may be entitled to an enhanced award of fees. Hensley, 461 U.S. at 435; see Lynch v. City of

Milwaukee, 747 F.2d 423, 429 (7th Cir. 1984) (quoting Strama v. Peterson, 689 F.2d 661, 665 (7th Cir. 1982)) ("[T]he enhancement of a § 1988 award may be seen as a 'bonus.'"). In such an exceptional case, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Hensley, 461 U.S. at 435. A district court must measure the prevailing party's success "not only in the amount of the recovery but also in terms of the principle established and the harm checked." Zagorski v. Midwest Billing Servs., Inc., 128 F.3d 1164, 1167 (7th Cir. 1997). The court must "'look at the difference between the judgment recovered and the recovery sought, the significance of the legal issues on which the plaintiff prevailed and, finally, the public purpose served by the litigation.'" Id. at 1167 n.5 (citing Farrar, 506 U.S. at 121–22 (O'Connor, J., concurring), and quoting Cartwright v. Stamper, 7 F.3d 106, 109 (7th Cir. 1993)). Courts also may consider "the deterrent effect of the litigation . . . when evaluating the 'degree of success' obtained by a particular plaintiff" in civil-rights litigation. Id. at 1167, n.6.

There are factors weighing in favor of both parties' positions. The plaintiff's *pro se* complaint initially sought an undisclosed amount of compensatory and punitive damages. Dkt. No. 1 at 8. The plaintiff's settlement offers varied between approximately $73,500 in January 2019 to nearly $180,000 a few months later to $135,000 per defendant (a total of $540,000) in May 2021. Dkt. No. 178 at 6. The plaintiff's final offer was $540,000, which the defendants rejected by making a counteroffer of $270,000. Id. at 7. The plaintiff accepted the counteroffer, and that agreed-upon settlement was taken to, but

rejected by, the Milwaukee Common Council. The jury awarded the plaintiff $386,500—$116,500 more than the rejected, agreed settlement—for only five of his sixteen claims. But the plaintiff asked the jury to award the plaintiff $2.4 million—over six times more than the amount the jury awarded.

Although the jury awarded only 16% or so of the amount the plaintiff requested in closing, the jury concluded that two Milwaukee Police officers violated the plaintiff's constitutional rights. That is a significant and important conclusion for the City and for the public, who interact with and have varying degrees of trust in police officers (including Valuch, who remains on the force). The jury awarded this sum to an incarcerated person whom the jury knew had been convicted of multiple felonies. The jury's nearly $400,000 verdict against two current or former Milwaukee Police officers is an excellent recovery.

The court also agrees with the defendants that the City should not be punished because it did not settle the case. The defendants' counteroffers and settlement discussions with plaintiff's counsel do not reflect bad faith in negotiating. The defendants reached a settlement but were precluded from finalizing it because of the Common Council's decision. It would be unreasonable to punish the defendants with additional fees because of the comments of a single alderman. There could have been other, legitimate reasons for the Common Council to refuse to approve the settlement—the available budget or the facts involved in other settlements. But the court will consider the fact that the defendants' counteroffer of $270,000, which the plaintiff accepted and which was proposed to the Common Council—was an

offer to settle *all* the plaintiff's claims; the defendants offered the plaintiff $110,000 *less* than the jury awarded the plaintiff on only *some* of his claims. That discrepancy suggests that the defendants underestimated the strength of the plaintiff's case. Had the jury found for the plaintiff on all his claims, and not just five of sixteen, the damages award might have stretched into the millions. That the defendants did not find themselves at the receiving end of a seven-figure damages award is not reason to reduce the plaintiff's attorneys' fees award by 66.67%. See Hensley, 461 U.S. at 435.

The court finds that, given the jury's substantial award to the plaintiff (an incarcerated individual and known felon) on five of his sixteen claims against current and former police officers—an award nearly one third higher than the settlement the parties reached for all sixteen claims—an enhancement of the plaintiff's fee award is warranted. The court will increase the plaintiff's fee award by $19,300—5% of the total damages award. The court believes this enhancement fully compensates plaintiff's counsel for their efforts and fairly reflects the significance and value of the result achieved.

The plaintiff also requests $4,779.82 in costs. Dkt. No. 178 at 4. In support of that total, plaintiff's counsel submitted a detailed expense report, invoices for exhibits and deposition transcripts and receipts for payment of those documents. Dkt. No. 179-2 at 10–12; Dkt. No. 179-3 at 2–14. The defendant does not object to these proposed costs. The court finds that the plaintiff has satisfied his burden to justify his attorneys' costs. The court will award the full amount requested.

D.    Section 1997e(d)(2) and the Contingency Fee

Perhaps the biggest issue left unaddressed by the parties is 42 U.S.C.
§1997e(d)(2), and the relevance of the fact that the plaintiff's counsel took this
case on a contingency fee basis.

Section 1997e(d)(2) says that "[w]henever a monetary judgment is
awarded in an action described in paragraph (1) [an "action brought by a
prisoner who is confined to any jail, prison, or other correctional facility, in
which attorney's fees are authorized under section 1988 of this title], a portion
of the judgment (not to exceed 25 percent) shall be applied to satisfy the
amount of attorney's fees awarded against the defendant. If the award of
attorney's fees is not greater than 150 percent of the judgment, the excess shall
be paid by the defendant." Here, the jury awarded the plaintiff a monetary
judgment of $386,000. Depending on whether one relies on the amount
reflected in the invoices attached to the plaintiff's motion or the amount
requested in that motion, the plaintiff is seeking fees of either $221,554.50 (the
invoice total) or $231,895 (the amount requested in the motion)—57% to 60%
of the damages award, before the application of a "success" enhancement. The
statute indicates that the court may require no more than 25% of the
judgment—here, no more than $96,500—of any fee award to be paid from the
judgment; the remainder must come from the defendants.

In Johnson, Seventh Circuit read the language of §1997e(d)(2) to mean
that "attorneys' compensation comes *first* from the damages, as in ordinary tort
litigation, and only if 25% of the award is inadequate to compensate counsel

fully may defendant be ordered to pay more under § 1988." <u>Johnson</u>, 339 F.3d at 584–85. But other courts have read the language in <u>Johnson</u> as *dicta* and have held that 25% is only the *maximum* of the fee award that may come from the judgment. <u>See, *e.g.*</u>, <u>Farella v. Hockaday</u>, 304 F. Supp. 2d 1076, 1081 (C.D. Ill. 2004) (applying only 10% of the judgment towards attorney's fees). If that reading is correct, the court has discretion to decide what percentage of the fee award (from 0% up to 25%) must be paid out of the judgment, rather than by the defendants.

Complicating matters further is the fact that Attorney Cade agreed to represent the plaintiff on a 40% contingency basis. Dkt. No. 179-1 at 2, ¶2A. The Supreme Court considered this situation—a case in which a plaintiff was entitled to reasonable attorney's fees under §1988 but the plaintiff had signed a contingency fee agreement. <u>Bergeron</u>, 489 U.S. 87. The Supreme Court reversed a lower court decision reducing the award of attorneys' fees because the attorney had agreed to represent the plaintiff on a 40% contingency. <u>Id.</u> at 90. The Court held that the existence of a contingency fee was one of the facts the court could consider in calculating a reasonable award of attorneys' fees, but held that "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be inconsistent with the statute and its policy and purpose." <u>Id.</u> at 93. The <u>Bergeron</u> Court determined that §1988's provision allowing "reasonable" attorney's fees contemplated "reasonable compensation, in light of all the circumstances, for

the time and effort expended by the attorney for the prevailing plaintiff, no more and no less." Id. The Court explained:

> Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount. The defendant is not, however, required to pay the amount called for in a contingent-fee contract if it is more than a reasonable fee calculated in the usual way. It is true that the purpose of § 1988 was to make sure that competent counsel was available to civil rights plaintiffs, and it is of course arguable that if a plaintiff is able to secure an attorney on the basis of a contingent or other fee agreement, the purpose of the statute is served if the plaintiff is bound by his contract. On that basis, however, the plaintiff should recover nothing from the defendant, which would be plainly contrary to the statute. And Congress implemented its purpose by broadly requiring all defendants to pay a reasonable fee to all prevailing plaintiffs, if ordered to do so by the court. Thus it is that a plaintiff's recovery will not be reduced by what he must pay his counsel. Plaintiffs who can afford to hire their own lawyers, as well as impecunious litigants, may take advantage of this provision. And where there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee. All of this is consistent with and reflects our decisions in cases involving court-awarded attorney's fees.

Id. at 93–94.

The Bergeron Court, quoting Hensley, explained that lower courts must start by applying the applicable hourly billing rates to the hours reasonably expended on the successful claims, then adjusting the lodestar calculation by other factors (only one of which is the existence of a contingency fee). Id. at 95.

The parties did not address any of this. They did not address the existence of the contingency fee as a factor for the court to consider in adjusting the lodestar. They did not address whether, if the court uses its discretion to award attorneys' fees, it has authority to order the defendants to pay the entire amount of those fees, or whether it must order that some portion

(not to exceed 25% of the total damages award) should be paid from the judgment that plaintiff's counsel already will receive a significant percentage of. The court will require the parties to address these issues in the amended motion and any response.

## IV.   Conclusion

The court **ORDERS** that by the end of the day on **January 27, 2023**, the plaintiff must file an amended motion for legal fees and costs, addressing all of the issues raised in this order.

The court **ORDERS** that if the defendants oppose or disagree with any part of the plaintiff's amended motion for legal fees and costs, they must file their opposition papers by the end of the day on **February 10, 2023**. The plaintiff may file a reply in support of the motion by the end of the day on **February 17, 2023**.

Dated in Milwaukee, Wisconsin this 27th day of December, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**