UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERPAUL D. SPENCER,

                        Plaintiff,

        v.                                              Case No. 16-cv-662-pp

MICHAEL VAGNINI, *et al.*,

                        Defendants.

**ORDER GRANTING PLAINTIFF'S AMENDED MOTION FOR LEGAL FEES
AND COSTS UNDER 42 U.S.C. §1988 AND MODIFYING AMOUNT AWARDED
(DKT. NO. 193)**

After a jury trial that ended with the jury awarding the plaintiff $386,000

against two defendants and finding in favor of the other two defendants, the

plaintiff filed a motion seeking $313,973.15 in attorney's fees and costs under

42 U.S.C. §1988. Dkt. No. 178. On December 27, 2022, the court issued an

order discussing that motion. Dkt. No. 191. The court neither granted nor

denied the motion because there were several issues that the parties had not

addressed in their briefing—issues that the court believed would impact the

court's determination of the proper fee amount. See generally id.

        The court first noted that neither party had discussed the compensation

limits that the Prison Litigation Reform Act (PLRA) sets for fee awards, and the

plaintiff had not calculated a base fee award—the "lodestar"—using the hourly

rate limits that the PLRA mandates. Id. at 6–7. The court explained, "It is not

the court's responsibility to calculate the lodestar in the first instance; the

plaintiff bears that burden." Id. at 13–14. The court ordered the plaintiff "to

1

amend the motion to calculate the hourly rates for each lawyer based on the limited rates mandated by the PLRA, because that is 'the absolute cap' allowed under §1997e(d)(3)." Id. at 14.

The court explained in detail several adjustments and exclusions it was making to the plaintiff's proposed recoverable hours based on mathematical errors or unsupported hours in the attorneys' invoice. Id. at 29–37. The court required the plaintiff to make the adjustments the court described "or to provide the court with explanations for the discrepancies/math errors/typographical errors that would justify including the time." Id. at 37. The plaintiff billed an "intern's" time at $150 an hour; in the amended motion, he objects to the court's order reducing that rate to $90 an hour. He also argues that the court erred in perceiving that one of the plaintiff's attorneys, Attorney Nate Cade, had discounted by 1.1 hours the amount of time he spent preparing the fee petition (the plaintiff asks for the "full 1.7 hours" spent preparing the fee petition. Id.; Dkt. No. 193 at 2–3. The plaintiff contests the court's reasoning in making a third reduction for time counsel spent waiting for the verdict on the final day of trial but does not seek an adjustment of that time. Dkt. No. 193 at 3–4. This order addresses each of these contentions.

The court enhanced the plaintiff's fee award by 5% to reflect "the jury's substantial award to the plaintiff (an incarcerated individual and known felon) on five of his sixteen claims against current and former police officers—an award nearly one third higher than the [$270,000] settlement the parties reached for all sixteen claims." Dkt. No. 191 at 41. The court explained that

"this enhancement fully compensates plaintiff's counsel for their efforts and fairly reflects the significance and value of the result achieved." Id. In the amended motion, the plaintiff's counsel expresses gratitude for the enhancement but maintains that "such enhancement does not go far enough." Dkt. No. 193 at 8. The court will address the parties' additional arguments regarding the enhancement of the lodestar amount.

The court also noted that "the biggest issue left unaddressed by the parties is 42 U.S.C. §1997e(d)(2), and the relevance of the fact that the plaintiff's counsel took this case on a contingency fee basis." Dkt. No. 191 at 42. The court reviewed Seventh Circuit law that stated, perhaps in *dicta*, that payment of the fee award must come first from the damages award and then from the defendant "'only if 25% of the award is inadequate to compensate counsel fully.'" Id. at 42–43 (quoting Johnson v. Daley, 339 F.3d 582, 584–85 (7th Cir. 2003)). The court explained that case law after Johnson left unclear whether the 25% figure was discretionary or mandatory; it was unclear whether the court had the discretion to order the plaintiff to pay *any amount* of the fees—but no more than 25% of the judgment—or whether the plaintiff was required to pay *as much of the judgment as necessary*—up to 25%—to satisfy the fee award. Id. The court also explained that Attorney Cade and the plaintiff had agreed on a 40% contingency fee and observed that it was not clear what effect the fee agreement might have on the fee award. Id. at 43. Because the parties had not addressed any questions related to §1997e(d)(2) or the plaintiff's contingency fee agreement, the court required the parties to address

those issues in the amended motion and the response. Id. at 44–45. The parties now have addressed those issues, which the court discusses below.

Finally, in the amended motion, the plaintiff's counsel suggests that the PLRA should not apply to this lawsuit at all, and that its limitation on attorney's fees does not apply to the calculation of attorney's fees in this case. Dkt. No. 193 at 14. He says that the plaintiff "should not receive less of damages [*sic*] under Section 1988 than he would be entitled to but for being in prison." Id. The court also addresses this contention.

## I.    Lodestar Calculation Using the PLRA Fee Limits

The plaintiff's counsel prepared two proposed fee charts—one using the current PLRA rate for all hours counsel worked on the case and one using the rates in effect at the time counsel was performing the work. Dkt. No. 193 at 6–8. The chart using the current PLRA rate allows Attorneys Cade, Annalisa Pusick and Carlos Pastrana to recover $237 per hour worked, which is 150% of the PLRA rate during the year 2022. Id. at 6; see Dkt. No. 191 at 5. Using this rate, the plaintiff calculates a lodestar subtotal (not including costs or any enhancement) of $117,041.80. Dkt. No. 193 at 6. Using the historical PLRA rates in effect at the time the work was performed, the plaintiff calculates a lodestar subtotal of $114,060.01.[1] Id. at 7. The plaintiff asserts that the court should use the PLRA rate in effect at the time the court entered judgment, which is the $237-per-hour rate reflected in the first chart. Id. at 4, 6. The

---

[1] The court believes the $0.01 cent is a typographical error, and the proper cents should be $0.10, which results from adding Attorneys Cade and Pusick's totals ($89,586.15 and $19,759.95). Dkt. No. 193 at 7.

plaintiff also takes exception to two of the court's reductions in the lodestar amount and responds to the court's reduction in hours for time counsel spent awaiting the verdict.

    A.   <u>Hourly Rate</u>

The court calculated the appropriate hourly rate for each attorney using the Criminal Justice Act (CJA) rate applicable for counsel in non-capital cases. Dkt. No. 191 at 4 (citing <u>Johnson</u>, 339 F.3d at 583–84, and 42 U.S.C. §1997e(d)). The court noted that those rates change periodically, most often by year. <u>Id.</u> The court calculated a maximum hourly rate for the plaintiff's attorneys of between $210 and $237 per hour based on the applicable CJA rate in effect at the time the work was completed. <u>Id.</u> at 4–5.

The plaintiff argues that this calculation was erroneous and asserts that the court should apply the hourly rate in effect at the time it entered judgment—July 2022—to all hours completed in the case, not only to hours completed in the year 2022. Dkt. No. 193 at 4. The plaintiff quotes <u>Missouri v. Jenkins by Agyei</u>, 491 U.S. 274, 283–84 (1989), in which the Supreme Court held that "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute [§1988]." <u>Id.</u> at 4–5. The Supreme Court added, "An adjustment for delay in payment is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee under § 1988." <u>Jenkins</u>, 491 U.S. at 284.

Relying on the language in <u>Jenkins</u>, the Seventh Circuit has explained that a district court may use one of "two methods of compensating for the delay in payment of attorney's fees." <u>Smith v. Vill. of Maywood</u>, 17 F.3d 219, 221 (7th Cir. 1994). The first method "is to calculate the fee award using the attorney's current rates." <u>Id.</u> This is the method for which plaintiff's counsel advocates by asking the court to use the 2022 CJA rate for all work the attorneys performed on the case regardless of the year they completed it. The other method "is to 'base the award on the rates the lawyers charged when they rendered the services to the [client] and to add interest on that amount to the present.'" <u>Id.</u> (quoting <u>Matter of Continental Ill. Sec. Litigation</u>, 962 F.2d 566, 571 (7th Cir. 1992)). A district court "may elect to use either of these two methods—current rates or past rates with interest—as acceptable compensation for the delay in payment of fees." <u>Id.</u> (citing <u>Jenkins</u>, 491 U.S. at 282–84); <u>see also</u> <u>Mathur v. Bd. of Trustees of S. Ill. Univ.</u>, 317 F.3d 738, 745 (7th Cir. 2003) (citing <u>Smith</u> and approving use of current market rates when calculating lodestar amount in fee petition). Other courts in this district have used the current market rate when awarding attorney's fees "in order to compensate [plaintiff's] attorneys for the delay in payment." <u>King v. Bd. of Regents of Univ. of Wis. Sys.</u>, 748 F. Supp. 686, 690 (E.D. Wis. 1990); <u>see also</u> <u>Natzke v. PACCAR Inc.</u>, No. 17-cv-637-WCG, 2019 WL 1499725, at *1 (E.D. Wis. Apr. 5, 2019) (citing <u>Jenkins</u> and <u>Mathur</u>); <u>Clarke v. Ford Motor Co.</u>, No. 01-cv-961-LA, 2006 WL 752902, at *6 n.8 (E.D. Wis. Mar. 21, 2006) (citing <u>Jenkins</u>).

6

The defendants oppose the plaintiff's position and contend that the historical hourly rates should be used when calculating the lodestar amount. Dkt. No. 195 at 3. The defendants quote Eirhart v. Libbey-Owens-Ford Co., 774 F. Supp. 454, 456 (N.D. Ill. 1991), which says that "the goal of the fee award should be to place the lawyer in the same economic position as if the matter had been billed and paid like any regular component of the lawyer's practice for a paying client, rather than having to wait for payment at the end of the litigation." Id. The Eirhart court advocated using the historical hourly rates "rather than employing today's billing rates." 774 F. Supp. at 456. But the court added that "from time to time," a district court should also apply "the interest rates used to equate (a) payment today with (b) past payment plus the use of the money since then." Id. (citing Lippo v. Mobil Oil Corp., 692 F. Supp. 826, 838–39 (N.D. Ill. 1988)). This appears to be the "past rates with interest" method that the Seventh Circuit had described three years later in Smith, 17 F.3d at 221. The defendants do not mention Eirhart's discussion and inclusion of the interest rates; they quote only the language related to using the historical rate.[2]

The court finds that, in accordance with the cases cited above, the plaintiff's counsel are entitled to an adjustment in their fee award to account

---

[2] The Eirhart court also applied a "multiplier" to the award of attorney's fees, 774 F. Supp. at 458–59, but the Seventh Circuit reversed the application of the multiplier and remanded with instructions to award fees based on the lodestar amount only. Eirhart, 996 F.2d at, 852. Although that reversal is immaterial to the fee-rate question at issue here, defense counsel should have noted in their response brief the partial reversal and included in that brief a citation to the Seventh Circuit's decision.

for the delay in payment from 2018 (when Attorney Cade filed his notice of appearance) through 2022 (when the court entered judgment). The plaintiff did not advise the court which interest rate it should use to determine a proper delay enhancement under the "past rates with interest" method. For that reason, and because other courts in this district have used the "current market rates" method of addressing a time delay enhancement rather that awarding interest, this court will do the same and use the "current market rates" method to calculate the lodestar for the fee award. That means the maximum plaintiff's counsel may receive is $237 per hour (150% of the 2022 $158 CJA hourly rate). Dkt. No. 191 at 5. Given the difference between this rate and counsels' usual, non-PLRA hourly rates, the court finds that $237 per hour is an appropriate hourly rate to apply to all hours worked, regardless of the year, and will use that rate in calculating the lodestar.

      B.    <u>Intern Leah Birch's Hours</u>

The court determined in its previous order that the plaintiff could not recover fees for the time intern Leah Birch "spent preparing unfiled and immaterial pleadings" because they did not affect the plaintiff's ultimate success on his claims. Dkt. No. 191 at 20–21. The court reduced Ms. Birch's recoverable hours from 43.2 to 8.5 to reflect only the hours she "spent working with Attorney Cade on her case summary." <u>Id.</u> at 21.

Attorney Cade first clarifies that Ms. Birch, and all non-attorney interns in his office, were paid; he asserts that he uses the terms "interns" and "summer associates" interchangeably. Dkt. No. 194 at ¶2. The plaintiff

contends that it is "non-sensical" for the defendants to argue that Ms. Birch's hours for time she spent on filings or research "'not directed towards the successful claims'" should be discounted. Dkt. No. 196 at 6 (quoting Dkt. No. 195 (Def't's Resp. Br.) at 5). The court explained in its previous order that although a court "'should not award attorneys' fees for work on an unsuccessful claim "that is distinct in all respects from [the plaintiff's] successful claim,"' it also should not "exclude fees for work on a lawsuit that 'consists of related claims.'" Dkt. No. 191 at 26 (quoting <u>Vega v. Chi. Park Dist.</u>, 12 F.4th 696, 703 (7th Cir. 2021)). So while it is not "non-sensical" to argue for reducing a lawyer's or intern's hours based on time spent on unsuccessful claims, in some cases it may be impractical and inappropriate to do so.

This, however, is not one of those cases. Ms. Birch's invoice provides a detailed explanation for her work covering the 43.2 hours, including the 34.7 hours that the court concluded were not compensable. Dkt. No. 179-2 at 5. The court detailed in its order which of the 43.2 hours corresponded to preparation of a sur-reply to the defendants' motion for summary judgment and a Rule 11 motion, neither of which the plaintiff filed. Dkt. No. 191 at 20-21. The court recounted that it had granted the defendants' motion for partial summary judgment, which included a concession that there were genuine issues of material fact precluding summary judgment on the claims against defendants Vagnini, Knight, Valuch and Garland—against whom the plaintiff proceeded to trial and was partially successful. <u>Id.</u> (citing Dkt. No. 134 at 8). The plaintiff never filed nor asked to file a sur-reply, so—as the court explained

in the earlier order—Ms. Birch's work on that filing "had no effect on the plaintiff's ultimate success." Id. at 20–21.

The court also noted that the plaintiff had provided no evidence of what effect, if any, the unfiled Rule 11 motion had on his ultimate success. Id. at 21. The court speculated that the plaintiff may have given "former defendant Flynn notice of the motion and that caused the defendant to act, or refrain from acting, in some way that benefitted the plaintiff, but the plaintiff has not provided any evidence of that." Id. The court explained that it "would be excessive" to award the plaintiff for all hours Ms. Birch spent working on these documents that were unnecessary to the success of the plaintiff's case and were not filed. Id. at 21.

In his amended motion, the plaintiff asserts that Attorney Cade "had email communications" with former defense counsel about her motion for summary judgment for defendant Flynn. Dkt. No. 193 at 2. He attached copies of emails exchanged with former counsel about defendant Flynn and about the Rule 11 motion. Dkt. No. 194-1 at 2–3. These emails show that on May 11, 2020, Attorney Cade asked former defense counsel to withdraw her "summary judgment motion in the Jerpaul Spencer [sic], at least as it pertains to Chief Flynn." Id. at 2. Attorney Cade stipulated to the dismissal of defendant Busshardt and noted that he would "send a formal Rule 11 request," if defense counsel requested one. Id. Defense counsel responded on May 13, 2020, requesting Attorney Cade's "basis for [his] request for withdraw on Flynn." Id. Defense counsel noted that Attorney Cade already had provided "decisions that

[he] pointed to in [his] response" to the defendants' motion for summary judgment. Id. Attorney Cade responded the same day that those cases "would be enough." Id. He added:

> While you may not have knowledge of the facts of those cases as they were before your time in the office, the fact remains that Flynn knew or likely knew, as [Judge] Stadtmueller pointed out. It also is telling that you did not have Flynn prepare a new declaration, but relied on one from a different case.
>
> Please advise by Friday.

Id. The exhibit does not include any email exchanged after May 13, 2020.[3]

The plaintiff says he did not file a Rule 11 motion because "counsel believed that the issue should be decided by the Court as opposed to a motion for sanctions." Dkt. No. 193 at 2. On March 24, 2021—nearly a year after the May 2020 email exchanges—the court decided the defendants' motion for summary judgment and dismissed defendant Flynn, among others. Dkt. No. 134. The plaintiff asserts that the court should not exclude the time Ms. Birch spent working on the unfiled Rule 11 motion because the court already has discounted her hourly rate, which is significantly lower than the rate allowed for Attorney Cade and the other attorneys. Dkt. No. 193 at 2.

---

[3] The invoice included with the plaintiff's initial motion for fees includes an entry from Attorney Cade on July 8, 2020 for contacting defense counsel about the Rule 11 motion regarding defendant Flynn and his "lack of knowledge about strip searches." Dkt. No. 179-2 at 6. (In the previous order, the court incorrectly listed this entry as occurring on July 9, 2020. Dkt. No. 191 at 20.) The plaintiff did not attach to the amended motion any email from July 2020, and the invoice does not include an entry for the May 11 and 13, 2020, exchanges. Dkt. No. 179-2 at 5. The court surmises that the July 8, 2020 entry corresponds to the emails exchanged on May 11 and 13, 2020.

The emails that the plaintiff attached to the amended motion may explain the *basis* for the Rule 11 motion, but they do not demonstrate that the motion influenced defense counsel's actions in any way that affected the plaintiff's ultimate success. If anything, the emails show that the threat of a Rule 11 motion had no effect on defense counsel. Defense counsel did not withdraw or move to amend the motion for summary judgment as to defendant Flynn, and the court granted the defendants' motion and dismissed Flynn nearly a year later. The plaintiff was not successful on that claim. It would be excessive to allow the plaintiff to recover fees for the 34.7 hours Ms. Birch spent working on a sur-reply and researching a Rule 11 motion that were not filed and had no discernible effect on defense counsel's decisions or the plaintiff's success. The plaintiff may recover only the 8.5 hours that Ms. Birch billed for time spent working with Attorney Cade on her case summary, as the court explained in the previous order. Dkt. No. 191 at 21.

C.    Attorney Cade's Hours

The court stated in the previous order that although the invoice reflected a total of 1.7 hours for time Attorney Cade spent drafting and reviewing the initial fee petition, it sought payment for only 0.6 hours. Dkt. No. 191 at 37; see Dkt. No. 179-2 at 10 (entry of July 22, 2022). The court explained that it would "assume that Attorney Cade discounted the total amount of time spent preparing the fee petition, unless he indicates otherwise in the amended motion." Id. In his amended motion, Attorney Cade clarifies that he seeks the full 1.7 hours listed for time spent preparing the fee petition. Dkt. No. 193 at 3.

Because the invoice supports the full 1.7 hours, the court will include these hours in the calculation of the lodestar amount for time Attorney Cade spent preparing the fee petition.

      D.    <u>Time Spent Waiting for the Verdict</u>

The court determined in the previous order that the plaintiff could not "recover the full amount of time [counsel] spent waiting for the jury to return its verdict" on the final day of trial. Dkt. No. 191 at 24. The court allowed the plaintiff to recover approximately half (3.9 hours) of the 7.7 hours counsel waited for the verdict, to reflect the attorneys' time responding to the court's requests and the jury's questions and to acknowledge the likely difficult task of turning their attention to other matters after a long and difficult trial. <u>Id.</u> at 24–25.

The plaintiff does not contest this reduction *per se*; but counsel "raise[s] an issue with the Court with regards to the purported 'down time' while waiting for the jury verdict." Dkt. No. 193 at 3. The plaintiff asserts that the attorneys "had nowhere to go" while waiting for the verdict because their firm has no brick-and-mortar office and "operates as a 'virtual firm,'" meaning that to return to their "offices," counsel would have had to travel to their homes. <u>Id.</u> The plaintiff says that once the courthouse doors locked at 5:00 p.m., counsel were unable to freely leave and reenter the building and had to "wait to be escorted or allowed to go upstairs." <u>Id.</u> at 4. He says "it is unfair to suggest that counsel" could or should "'go somewhere'" to conduct other business during the final evening of the week of trial, when it was "after hours generally (hence

no other client business can be conducted)." <u>Id.</u> The plaintiff describes the court's position as "stating that counsel should be making phone calls from 5:00 to 8:30 p.m. on Friday, July 15 and bill other clients. That is unfair." <u>Id.</u>

The court understands counsel's position with respect to the reduced hours for the time spent awaiting the jury's verdict. But the court will not adjust this reduction. As the court explained in the previous order, "Counsel *could have (and may have)* conducted other business during the periods between jury questions and issues, for which the court requested their presence in the courtroom." Dkt. No. 191 at 24 (emphasis added). The court did not state that counsel *should have* been "making phone calls from 5:00 to 8:30 p.m. on Friday, July 15;" that it would have been "simple for counsel to 'go somewhere'" else to conduct business; or that counsel should have gone elsewhere "after 5pm on a Friday and bill another client." Dkt. No. 193 at 4. The court observed only that counsel *had the ability* to perform other work during *a portion* of the time while awaiting the jury's verdict that justified a reduction in the 7.7 hours billed for that time. The possible work need not have included phone calls to other clients but could have included other tasks typically performed by lawyers in private practice, such as responding to emails, reviewing discovery, reading case filings, conducting research, drafting or finalizing pleadings or motions, scheduling meetings and so on. Counsel *had the ability* to perform such tasks while stationed in the courtroom—with their work computers—while awaiting the verdict. That is why the court reduced the hours by approximately half rather than entirely discounting them.

14

At some point over the time the undersigned has known Attorney Cade, he likely told the undersigned that he did not have brick-and-mortar office space. The court has checked the docket and sees that Attorney Cade lists a post office box as his mailing address. But even if the court had recalled, or known, that at the time they were working on this case Attorneys Cade and Pusich did not occupy a brick-and-mortar office, that would not have been a reason for the court allow the plaintiff to recover the entire 7.7 hours waiting for the return of the verdict. Some lawyers travel from other states or cities to try cases; some office in Madison or Green Bay or cities more than an hour away. The issue is not whether lawyers have somewhere nearby to go; the issue is whether they have the ability to utilize the waiting time regardless of where they are while they are waiting.

The court reduced counsel's billed hours by only half to reflect both the fact that being in the courtroom likely limited what work counsel could perform and the likely difficulty for counsel in turning their attention to other matters. Id. at 23–25 ("Attorneys Cade and Pusick remained at the courthouse for all or nearly all the jury's deliberations, mostly sitting in the courtroom. The court knows this because court staff observed or spoke with plaintiff's counsel several times during the afternoon and evening. . . . The court also recognizes the physical and mental exhaustion the attorneys likely experienced during the final afternoon of an emotional, five-day trial. The court does not expect that counsel had a super-human ability to compartmentalize the preceding four days and to immediately turn their full attention to other matters."). The court

took these factors into account in reducing the billed hours for the time counsel spent awaiting the verdict. Its conclusion has not changed.

## II.     Enhancement of the Lodestar

The court did not ask or invite the parties to include additional information about a proper enhancement to the fee award. The plaintiff begins the amended motion by stating that he "will not reargue th[e] portion of the prior motion" seeking a 33.33% enhancement fee, rather than the 5% that the court awarded in its previous order. Dkt. No. 193 at 1. But the motion contains *new* arguments in support of increasing the enhancement the court previously said it would award. The plaintiff asserts that the PLRA and §1988 intend to adequately enforce federal rights and attract attorneys "'to undertake the representation of a meritorious [prisoner] civil rights case.'" Id. at 8 (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 550 (2010)). He contends that if a lodestar calculation using the PLRA rates is "insufficient to induce competent counsel to accept appointments in meritorious civil rights cases, by definition it is not a reasonable fee for counsel." Id.

The plaintiff asks the court to reconsider the 5% enhancement, taking into account the contingent-fee agreement with his counsel, the undesirability of the case and awards in other, similar cases. Id. at 9 (citing Hensley v. Eckerhart, 461 U.S. 424, 437 n.3 (1983)). He reiterates that the plaintiff was incarcerated when he filed his complaint, was representing himself and had no witnesses to the alleged misconduct. Id. The plaintiff insists that few members of the bar "would have taken on" this kind of "fairly undesirable case." Id.

Case 2:16-cv-00662-PP   Filed 09/19/23   Page 16 of 33   Document 197

The plaintiff next points to fees awarded in what he asserts are similar cases from this district. Id. at 9–10. He cites Harris v. City of Milwaukee, Case No. 14-cv-1002, in which the court awarded $270,103.77 in fees on a $1,675,188 jury verdict and in which the plaintiff "did not have a criminal record and was not the frequent target of the police." Id. at 10. The plaintiff cites Collins v. City of Milwaukee, et al., Case No. 17-cv-234, in which he says the City agreed to settle class action lawsuits involving illegal strip searches and "stipulated to a damage award of legal fees and costs and damages [sic] of $1,900,000." Id. Counsel cites Ashford, et al. v. City of Milwaukee, et al., Case No. 13-cv-771, in which he says the City settled with seventy-four plaintiffs for $5 million total. Id. He says the plaintiffs received $2.7 million, "while the plaintiffs' lawyers received $2,300,000," including fees and costs. Id. The plaintiff adds in a footnote that in Newman v. Vagnini, Case No. 15-cv-1363, the parties settled for $410,000—which included fees and costs—well below the jury's initial award of $1.95 million that the court reduced due to concerns about a juror. Id. at 11, n.5.

The plaintiff asserts that the defendants proceeded to trial despite "[k]nowing full well that the City had lost two other strip search cases that had proceeded to trial." Id. at 10–11. He says a "significantly greater upward adjustment of the legal fees is warranted" to account for the City's failure to settle this case for the amount the attorneys initially agreed upon. Id. at 11; see Dkt. No. 191 at 7–8 (recounting the parties' settlement attempts before trial). The plaintiff contends that whether the fee amount is calculated using the

historical or the current CJA rate, it "is still less than what was payable under the contingency fee agreement." Dkt. No. 193 at 11. He proposes a total fee award of $193,000—half of the total judgment the jury awarded plus the undisputed $4,779.82 in costs. Id. Using either fee chart the plaintiff proposes, that amounts to an enhancement of approximately 19–20% of the judgment (approximately $76,000 to $79,000) on top of the lodestar calculation. Id. at 6–7.

The defendants wisely retreat from their previous position requesting a 66.67% downward adjustment to the lodestar based on the damages award, dkt. no. 195 at 4, which they earlier had described as a "fraction of the amount requested" at trial, see Dkt. No. 191 at 11, 38. The defendants agree that the plaintiff likely had difficulty obtaining counsel. Dkt. No. 195 at 4. But they disagree that the case was undesirable, noting that "one of the Defendants had an impeachable past and had engaged in misconduct in office with a litany of lawsuits against him." Id. They assert that Attorney Cade "benefit[s] from handling cases such as this one." Id. The defendants attempt to distinguish the cases the plaintiff cites, noting that the cases settled or stipulated to a fee award and that the district court did not apply an enhancement. Id. at 5.

The plaintiff cites an additional, more recent case in his reply brief. Dkt. No. 196 at 4–5 and n.2 (citing Evans v. Hansen, Case No. 22-cv-606). The plaintiff says that the Evans case proceeded to trial, and the jury awarded the plaintiff $150,000 in compensatory damages against a police officer who shot the plaintiff after mistakenly believing that the plaintiff "had a gun and was

sneaking up on another police officer." Id. at 4–5. The plaintiff compares the outcome of that case to the outcome of this one, in which the jury awarded the plaintiff $386,000—$168,500 of which was punitive damages. Id. at 5. He notes that the jury did not hear about defendant Vagnini's "impeachable past" or the "litany of lawsuits" against him and heard only that Vagnini had been convicted of felony misconduct in office. Id. The plaintiff reiterates the undesirability of this case and asserts that the "City (and the Court) should give counsel a bit more credit than a 5% enhancement based on the Jury's understanding and determinations based on the evidence." Id. at 6.

In its previous order, the court explained the relevant considerations when determining whether an enhancement to the fee award is appropriate and recapped the "factors weighing in favor of both parties' positions" for and against an enhancement. Dkt. No. 191 at 38–41. Among the factors were the history of settlement negotiations between the parties, the "significant and important conclusion for the City and for the public" of the jury's verdict and the amount—nearly $400,000—awarded "to an incarcerated person whom the jury knew had been convicted of multiple felonies." Id. at 39–40. The court concluded that the 5% enhancement of $19,300 "fully compensates plaintiff's counsel for their efforts and fairly reflects the significance and value of the result achieved." Id. at 41.

In his initial fee motion, the plaintiff discussed factors that he believed warranted a 33.33% enhancement, including the size of the jury award, the alleged "bad faith" of the City during settlement negotiations and the difficulty

or undesirability of the case. Dkt. No. 178 at 13–16. He cited Hensley, which lists "awards in similar cases" among the factors a court should consider when determining a reasonable fee award. Id. at 5 (citing Hensley, 461 U.S. at 430 n.3). But in the original motion, the plaintiff did not cite the cases he cites in the amended motion, or discuss the fee awards from those cases as reason for the court to enhance the fee award. Aside from the Evans case—in which judgment was entered in March 2023, only six months ago—the cases the plaintiff's counsel cites in his amended motion were available to him at the time he filed his original motion. Indeed, Attorney Cade represented the plaintiff in one of the cases he now cites. See Harris, Case No. 14-cv-1002, Dkt. No. 50 (Attorney Cade's Notice of Appearance). Counsel does not explain why he did not mention any of the allegedly similar cases in the original fee motion, or why he cited them only after the court already had determined an appropriate enhancement to the fee award.

Even if counsel had discussed the previous cases in the original fee motion, they are not as similar as the plaintiff contends. The cases have some similarities—lawsuits against the City of Milwaukee and/or its current or former employees for their alleged misconduct—but as the defendants note, there are significant differences. In Harris, the jury award was significantly larger ($1.675 million compared to the $386,000 award in this case), and the parties stipulated to the fee award. See Case No. 14-cv-1002, Dkt. Nos. 149 (Jury Verdict), 158 (Parties' Stipulation re Attorney's Fees). The eight plaintiffs in Collins also stipulated with the defendants to the fee award, although that

case did not go to trial. See Case No. 17-cv-234, Dkt. No. 135. Ashford was a class action case brought on behalf of seventy-four plaintiffs who received a total of $2.7 million. Dkt. No. 194-3. The plaintiffs' attorneys received $2.3 million, but litigating on behalf of seventy-four plaintiffs is quantitatively different than litigating on behalf of one, regardless of how "undesirable" the case may be, and again, the plaintiff cites to *settlement* documents showing that the *defendants* proposed the $2.3 million in fees and costs as part of the settlement. Id.; https://www.cbs58.com/news/milwaukee-common-council-to-consider-5-million-settlement-in-illegal-strip-search-lawsuit. The parties in Newman settled after the court reduced a nearly $2 million jury verdict because of juror concerns. Case No. 15-cv-1363, Dkt. Nos. 62 (Special Verdict), 112 (Stipulation Vacating Jury Verdict and Dismissing); see Dkt. No. 194-4.

Here, the defendants are *not* stipulating to the enhancement the plaintiff requests; they vigorously oppose it. In the face of such a dispute, the court relies on its prior analysis of the factors discussed above. The court believes that analysis remains sound.

The court understands the parties' additional positions in favor of and against a more significant enhancement. Those arguments do not convince the court that its original conclusion was unreasonable, given the facts and circumstances of this case. The court will not modify the enhancement it previously awarded to the plaintiff. It will increase the plaintiff's fee award by $19,300—5% of the total damages award.

### III.    Section 1997e(d)(2) and Contingency Fees

A.    <u>Section 1997e(d)(2)</u>

The plaintiff asserted in the amended motion that "the Court has discretion to decide the amount of Plaintiff's judgment that is to be applied towards legal fees." Dkt. No. 193 at 13. In his reply brief, however, the plaintiff withdrew that position and agreed with the defendants' position outlined in their response, which is that the court *must* order the plaintiff to pay *the full 25%* of the judgment toward the fee award under <u>Murphy v. Smith</u>, ___ U.S. ___, 138 S. Ct. 784 (2018). Dkt. No. 195 at 6–7; Dkt. No. 196 at 7.

In <u>Murphy</u>, the Supreme Court framed the question before it this way:

> When a prisoner wins a civil rights suit and the district court awards fees to the prisoner's attorney, a federal statute says that "a portion of the [prisoner's] judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2). . . . But how much is enough? Does the first sentence allow the district court discretion to take *any* amount it wishes from the plaintiff's judgment to pay the attorney, from 25% down to a penny? Or does the first sentence instead mean that the court must pay the attorney's entire fee award from the plaintiff's judgment until it reaches the 25% cap and only then turn to the defendant?

<u>Murphy</u>, 138 S. Ct. at 786.

The Court determined that the use of the word "shall" created a mandate: "the court (1) *must* apply judgment funds toward the fee award (2) with the *purpose* of (3) *fully discharging* the fee award." <u>Id.</u> at 787. In other words, §1997e(d)(2) "instruct[s] the judge about the purpose [s]he must pursue—to discharge the fee award using judgment funds to the extent possible, subject to

22

the 25% cap." <u>Id.</u> at 788; <u>see also</u> <u>id.</u> at 790 (holding "that district courts must apply as much of the judgment as necessary, up to 25%, to satisfy an award of attorney's fees).

The court agrees with the parties that <u>Murphy</u> guides the application of §1997e(d)(2) to the plaintiff's fee award. In compliance with that decision, the court will order the plaintiff to pay 25% of the judgment—$96,500—toward the total award of attorney's fees. The defendants must pay the balance of the fee award.

      B.    <u>Contingency Fee</u>

The court explained in the previous order that the Supreme Court has "held that the existence of a contingency fee was one of the facts the court could consider in calculating a reasonable award of attorney's fees, but held that 'a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be inconsistent with the statute and its policy and purpose.'" Dkt. No. 191 at 43 (quoting <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 94 (1989)). The court required the parties to "address the existence of the contingency fee as a factor for the court to consider in adjusting the lodestar." <u>Id.</u> at 44.

The plaintiff says he "could not locate any cases that specify a court can award a plaintiff his actual contingency fees" and suggests that "the opposite likely is true based on Judge Easterbrook's opinion in <u>Johnson v. Daley</u>, 339 F.3d 582, 585 and n.4 (7th Cir. 2003)." Dkt. No. 193 at 11. The plaintiff notes that the court has the discretion to award the plaintiff up to 150% of the

23

$386,000 judgment under <u>Johnson</u> and §1997e(d). <u>Id.</u> at 11–12. He asserts that under the lodestar formula explained in <u>Hensley</u>, 461 U.S. at 433, "the Court can consider whether the matter is a fixed or contingent fee." <u>Id.</u>

The defendants note that the plaintiff and his counsel agreed on a 40% contingency fee[4] and suggest that the fee agreement "more than compensates for the legal services provided to Jerpaul Spencer, such that a statutory award is not necessary." Dkt. No. 195 at 2. The defendants cite <u>Wheatley v. Ford</u>, 679 F.2d 1037, 1041 (2d Cir. 1982), in which counsel had a 40% contingency fee agreement with the plaintiff, who was successful at trial. <u>Id.</u> The Second Circuit noted that the fact that counsel had a contingency contract with his client "[was] not sufficient reason to deny an award under section 1988," but the Court retained a "supervisory power" to ensure that counsel did not receive a windfall recovery under the agreement. <u>Id.</u> The court concluded that "to the extent counsel receives payment of the section 1988 statutory award, his claim for services rendered under his contingency fee arrangement with his client shall be deemed paid and satisfied." <u>Id.</u> But the court also modified what it considered to be an excessive damages award, which resulted in the approved request for statutory fees under §1988 being *above* the damages amount. <u>Id.</u> at 1040–41; <u>see</u> <u>Sanchez v. Schwartz</u>, 688 F.2d 503, 505 n.8 (7th Cir. 1982) (discussing <u>Wheatley</u>). In other words, counsel's contingency fee was satisfied because the fee award he received under §1988 was more than 40% of the

---

[4] Forty percent of the jury's award would be $154,400.

damages that the contingency contract provided. Even using the plaintiff's proposed fee awards, that will not be the case here. See Dkt. No. 193 at 6–8.

The court found several cases providing guidance on how a contingency fee agreement should affect the prevailing party's fee award. The Supreme Court has held that §1988 "does not interfere with the enforceability of a contingent-fee contract," Venegas v. Mitchell, 495 U.S. 82, 90 (1990), which means a plaintiff may be obligated under a contingency fee agreement to pay his attorney significantly more than the court awards. The Seventh Circuit has explained that "a court cannot adjust an hourly rate based on the existence of a contingency fee agreement." Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 645 (7th Cir. 2011) (discussing City of Burlington v. Dague, 505 U.S. 557, 566 (1992)). In a case before another district court in this circuit, the prevailing party had "agreed to pay a fee to" her attorneys "on a contingent basis," which would result in "a $50,000.00 fee." Wolf v. Planned Prop. Mgmt., 735 F. Supp. 882, 886 (N.D. Ill. 1990). The court found that the fee "says little about whether the lodestar is a reasonable amount for the work [the plaintiff's] lawyers performed." Id. at 886–87. The court ultimately awarded the plaintiff $90,535.50 in attorney's fees based on the hourly rates at the time and what the court determined was "a reasonable claim" of hours. Id. at 886–87.

These cases illuminate the following rules regarding how the court should consider or incorporate a contingency fee agreement into its calculations of a reasonable attorney's fee:

- The court cannot adjust the hourly rate used to calculate the lodestar merely because the judgment is subject to the contingency fee;
- Section 1988 does not itself affect the agreement or what the plaintiff owes his attorneys under the agreement; and
- the "contingency-fee factor is simply that, a factor."

Blanchard, 489 U.S. at 93.

The court discussed above the hourly rates it will use to calculate the lodestar based on the attorneys' current rates, the PLRA's limitations and the CJA rates in effect in 2022. The court cannot, and will not, alter those hourly rates because of the existence of the contingency contract. The court will consider the contingency agreement as a factor in determining the total, reasonable fee amount under Blanchard and Hensley.

**IV. Application of the PLRA**

The plaintiff now asserts that the PLRA's fee limits should not apply and, more broadly, that the PLRA should not apply to this case in any respect. Dkt. No. 193 at 14. The plaintiff did not raise this argument in his initial fee motion and previously has not suggested that the court should not have reviewed and analyzed his lawsuit or the determination of a reasonable fee award under the PLRA.

The plaintiff asserts that "the Third Circuit has taken the position that the PLRA does not apply to prisoners who file suit over matters that occurred prior to incarceration and have no relation for the reason that they are in prison (i.e. not prison condition suits)." Id. He says the Seventh Circuit has "not decided" this question. Id. But counsel does not cite Third Circuit decisions in support of this assertion; he cites two cases from the Eastern

District of Pennsylvania. Id. (citing Hatchett v. Cty. of Philadelphia, No. CIV.A. 09-1708, 2010 WL 4054285 (E.D. Pa. Oct. 15, 2010); and Hall v. Galie, No. CIV.A. 05-975, 2009 WL 722278 (E.D. Pa. Mar. 17, 2009)). Although the Eastern District of Pennsylvania is in the Third Circuit, courts in that district do not speak on behalf of the Court of Appeals. One of those cases even notes, "The Third Circuit Court of Appeals *has not directly addressed* whether PLRA limits on attorneys' fees apply to any civil rights case of any sort filed by an incarcerated person or apply only to cases expressly challenging 'prison conditions.'" Hall, 2009 WL 722278, at *4 (emphasis added).[5] And decisions by sister district courts are not binding on this court.

The PLRA defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. §1997e(h). The Seventh Circuit repeatedly has said that to determine whether a plaintiff is a "prisoner" as the PLRA defines it, the court "must look to the status of the plaintiff at the time he brings his suit." Witzke v. Femal, 376 F.3d 744, 750 (7th Cir. 2004) (citing Kerr v. Puckett, 138 F.3d 321, 323 (7th Cir. 1998); Ahmed v. Dragovich, 297 F.3d 201, 210 n.10 (3d Cir. 2002)); and others). This court previously noted that it had "explained years ago in the screening order"

_____

[5] In his reply brief, the plaintiff relies on a third unpublished, out-of-circuit district court decision, which cites neither Hall nor Hatchett. Dkt. No. 196 at 2–3 (citing Donastorg v. City of Ontario, Case No. EDCV18992JGBSPX, 2021 WL 6103545, at *5 (C.D. Cal. Sept. 23, 2021)).

that the PLRA "applies to this case because the plaintiff was a prisoner when he filed his complaint." Dkt. No. 191 at 4 (citing Dkt. No. 13 at 1). The parties do not dispute that conclusion. The PLRA generally applies to this case.

But the plaintiff may be correct that the Seventh Circuit has not directly addressed the specific question of whether the PLRA's attorney's fee provision—§1997e(d)—applies to incarcerated plaintiffs who file civil rights cases based on events that occurred prior to their incarceration. The court was unable to locate any Seventh Circuit case that directly addresses that issue. But Supreme Court and other circuit court precedent provide guidance on the matter.

In Porter v. Nussle, 534 U.S. 516, 529 (2002), the Supreme Court noted that the exhaustion provision of the PLRA, 42 U.S.C. §1997e(a), specifies that it applies only to lawsuits "brought with respect to prison conditions." The Court surmised that it was "plausible . . . that Congress inserted 'prison conditions' into the exhaustion provision simply to make it clear that preincarceration claims fall outside § 1997e(a)." Id. Subsections 1997e(c) and (f) similarly limit their application to lawsuits "brought with respect to prison conditions." Id.; 42 U.S.C. §§1997e(c)(1), (f)(1). But no similar limiting language appears in §1997e(d), which governs attorney's fees. That section applies to "*any action* brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988." Id. §1997e(d)(1) (emphasis added). "[W]here Congress includes particular language in one section of a statue but omits it in another section of the same Act, it is

generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)). That these subsections appear in the same statute suggests that Congress intended some subsections of §1997e to apply only to claims "brought with respect to prison conditions" but intended the limitation on attorney's fees to apply to "any action brought by a prisoner," whether involving preincarceration conduct or prison conditions.

The court found decisions on this limited issue from only two circuit courts of appeal. The Tenth and Eleventh Circuits both have concluded in published opinions that the PLRA's limitation on attorney's fees applies to *all* suits brought by incarcerated persons "regardless of the subject matter of the claim, whether it be prison conditions or preincarceration conduct." Robbins v. Chronister, 435 F.3d 1238, 1244 (10th Cir. 2006) (*en banc*); see Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 796 (11th Cir. 2003) (concluding that "§ 1997e(d)'s phrase 'any action brought by a prisoner' means all lawsuits that are filed by a prisoner and is not restricted to lawsuits challenging 'prison conditions' that are filed by a prisoner").

The court found support for the plaintiff's position in some unpublished, district court decisions. See Sutton v. City of Yonkers, No. 13CIV801GBDGWG, 2017 WL 1180918, at *3–*4 (S.D.N.Y. Mar. 29, 2017) (adopting in part and rejecting in part the magistrate judge's report and recommendation limiting the plaintiff's fee award under the PLRA); Donastorg v. City of Ontario, No. EDCV

18-992 JGB (SPx), 2021 WL 6103545, at *5 (C.D. Cal. Sept. 23, 2021) ("The PLRA governs civil rights violations that occur in jail, prison, or other correctional facility."). But courts in other districts disagree and have followed the Tenth and Eleventh Circuits' approach in holding that §1997e(d) applies to all lawsuits filed by incarcerated persons. See, e.g., Wyatt v. Owens, No. 7:14-CV-492, 2018 WL 10613184, at *3–7 (W.D. Va. Jan. 23, 2018); Sutton v. City of Yonkers, No. 13CIV801GBDGWG, 2017 WL 105022, at *4 (S.D.N.Y. Jan. 11, 2017) (magistrate judge's report and recommendation, reversed in part by district judge). The first Sutton decision also notes that the analysis in Hall "is flawed because it relied in part on the Tenth Circuit's panel decision in Robbins [v. Chronister, 402 F.3d 1047 (10th Cir. 2005)], which had been reversed three years earlier" after rehearing en banc in the opinion cited above. Sutton, 2017 WL 105022, at *4.

Section 1997e(d) governs attorney's fees in "any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 . . . ." (Emphasis added.) It does so in contrast to §§1997e(a) and (c), both of which confine their applicability to §1983 suits brought by incarcerated persons "with respect to prison conditions." The only circuit courts of appeal to consider the issue agree that the attorney's fee limits of §1997e(d) apply to any suit brought by an incarcerated person, whether it involves preincarceration events or prison conditions. The unpublished, out-of-circuit cases that the plaintiff cites are not persuasive and rely on the analysis from the reversed panel decision in

Robbins. Until the Seventh Circuit (or the Supreme Court) addresses this issue and comes to a different conclusion than the Tenth and Eleventh Circuits, the Tenth and Eleventh Circuit decisions, combined with construction of the statute, are the most persuasive authority.

The PLRA applies because the plaintiff filed the complaint that initiated this lawsuit while he was incarcerated, and §1997e(d)'s limitation on attorney's fees applies even though the complaint did not challenge "prison conditions" and involved events that occurred before the plaintiff was an incarcerated person.

**V.      Final Fee Calculation**

The chart below summarizes and calculates the lodestar amount in light of the plaintiff's amended fee petition. The "Requested Hours" are those the plaintiff lists in his amended fee chart, which incorporates most of the court's adjustments from the previous order. Dkt. No. 193 at 6. The court has reviewed the previous order, including the hours the plaintiff initially requested for each attorney or staff member and the court's adjustments to the requested hours. The court also incorporated the additional adjustment noted in this order—awarding Attorney Cade the full 1.7 hours he spent preparing the initial fee petition rather than the 0.6 hours listed in the invoice. Dkt. No. 179-2 at 10. The court's totals for each attorney or staff member differ slightly from those the plaintiff proposes. The court's final totals are represented in the "Awarded Hours" column.

The court will take into consideration the relative success of the plaintiff's case, his *pro se* status when he brought it and other relevant factors including the contingency fee agreement the plaintiff has with his attorneys. The court will enhance the fee award by $19,300—5% of the total damages award—for the reasons described above and in the previous order, and will award the full, uncontested $4,779.82 in costs. Dkt. No. 191 at 41.

| Attorney or Staff | Requested Hours | Court's Adjustments | Awarded Hours | Allowed Hourly Rate | Lodestar Amount |
|---|---|---|---|---|---|
| Nate Cade | 390.5 | -0.2 | 390.3 | $237.00 | $92,501.10 |
| Annalisa Pusick | 83.4 | +0.1 | 83.5 | $237.00 | $19,789.50 |
| Carlos Pastrana | 1.5 | -- | 1.5 | $237.00 | $355.50 |
| Melissa Richer | 0.2 | -- | 0.2 | $170.00 | $34.00 |
| Madison Bedder | 2.0 | -- | 2.0 | $90.00 | $180.00 |
| Mohammad Ahmad | 3.0 | -- | 3.0 | $90.00 | $270.00 |
| Leah Birch | 43.2 | -34.7 | 8.5 | $90.00 | $765.00 |
| | | | | | |
| Subtotal Fees | | | | | $113,895.10 |
| Enhancement | | | | | $19,300.00 |
| Costs | | | | | $4,779.82 |
| TOTAL (Fees and Costs) | | | | | **$137,974.92** |

The court exercises its discretion to grant the plaintiff's motion for attorney's fees and costs in the amount of $137,974.92 for work performed by his counsel. The court determines that $137,974.92 is a reasonable amount

under the circumstances of this case and will deny the motion as to any amount in excess of $137,974.92.

## VI. Conclusion

The court **GRANTS** the plaintiff's amended motion for attorney's fees and costs but **MODIFIES** the amount awarded as described above. Dkt. No. 193.

The court **AWARDS** the plaintiff **$137,974.92** in legal fees and costs under 42 U.S.C. §1988. In accordance with §1997e(d)(2), the plaintiff must pay 25% of the judgment—$96,500—toward this fee amount. The defendants must pay the remainder.

Dated in Milwaukee, Wisconsin this 19th day of September, 2023.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

33